STATE OF CONNECTICUT *v.* JASON CASIANO
(AC 18645)

Lavery, Sullivan and Daly, Js.

Argued April 28—officially released November 2, 1999

James B. Streeto, special public defender, for the appellant (defendant).

Mitchell S. Brody, assistant state's attorney, with whom, on the brief, were Michael Dearington, state's attorney, and James G. Clark, senior assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Jason Casiano, appeals from the judgment of conviction rendered following his conditional plea of nolo contendere to charges of felony murder in violation of General Statutes § 53a-54c, attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134, and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134. The defendant contends that the court improperly denied his motion to suppress incriminating statements that he made to the police. Specifically, the defendant claims that the trial court improperly (1) concluded that he was not in custody when he made incriminating oral statements, (2) concluded that he was not entitled to *Miranda*[1] warnings once he was interviewed as a suspect in the police station, (3) concluded that he validly

---

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

waived his *Miranda* rights prior to providing his oral statements, (4) admitted two written statements that he contends were tainted and should have been suppressed as the product of his previous oral statements, which he claims were improperly obtained, and (5) determined that the oral statements were made voluntarily. We affirm the judgment of the trial court.

The following facts are relevant to the determination of this appeal. On August 13, 1995, the Waterbury police department received information from an informant describing several individuals who might have been involved in an August 11, 1995 homicide at a sandwich shop in North Haven, and that one of those individuals, the defendant's cousin, Nicholas Aponte, lived on Rose Street in Waterbury. After that information was transmitted to the North Haven police department, Detectives Stephen Smith and Edward Murphy went to Waterbury, where Waterbury police informed them that there was an outstanding arrest warrant for Aponte on an unrelated matter.

Thereafter, in plainclothes and unmarked cars, Smith and Murphy, and Detective Patrick Deely and Sergeant Michael Ricci of the Waterbury police department drove to Rose Street to arrest Aponte and to question him regarding the August 11, 1995 homicide. When Aponte was arrested and handcuffed, the defendant, who was present, told the police that he wanted to go with Aponte to the police station. The police told the defendant that the decision to accompany Aponte was his to make. The defendant, who was never handcuffed, then exited the residence voluntarily and sat next to Aponte in the backseat of one of the unmarked police cars. Both individuals were then driven to the Waterbury police station.

When the defendant and Aponte arrived at the police station at approximately 12:30 p.m., Aponte was put in

an unlocked interrogation room, which had one transparent glass wall, and was handcuffed to a chair. In the adjoining room, which was separated by a glass partition, the defendant was seated where he could see Aponte through the glass. The defendant was given food, soda and cigarettes at his request.

Later that day, at approximately 2:30 p.m., Smith read the defendant his *Miranda* rights, but told him that he was not under arrest at that time and that he was free to leave. The defendant voluntarily chose to remain at the station with Aponte. At approximately 6 p.m. that evening, and again at approximately 10:15 p.m., Smith and Ricci questioned the defendant, who agreed to give written statements, which ultimately incriminated him and others in the August 11, 1995 homicide. Prior to the time that the defendant gave these written statements, however, Smith and Ricci again read the defendant his *Miranda* rights from a police card. The defendant acknowledged that he understood his rights and signed written waivers of them.

Thereafter, the defendant was arrested and charged with felony murder, attempt to commit robbery in the first degree and conspiracy to commit robbery in the first degree. At a hearing on February 3, 1997, the court denied the defendant's motion to suppress the incriminating written statements. On February 4, 1997, the court accepted the defendant's conditional plea of nolo contendere.[2] The defendant subsequently was sentenced to a total effective term of fifty years incarceration. This appeal followed.

I

The defendant first claims that the trial court improperly denied his motion to suppress the incriminating

---

[2] We note that the defendant's nolo contendere plea was conditioned on his right to appeal from the trial court's denial of his motion to suppress.

statements, whether written or oral, that he made to the police. In advancing this claim, the defendant asserts that the trial court improperly determined that he was not in custody during his questioning at the Waterbury police station prior to the time that he was read his *Miranda* rights and signed a written waiver of those rights. We disagree.

As a preliminary matter, "[o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Blackman*, 246 Conn. 547, 553, 716 A.2d 101 (1998).

Our Supreme Court has stated that "[i]n determining whether the defendant was in custody, we need to examine all of the circumstances surrounding the interrogation. [T]he ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Internal quotation marks omitted.) *State* v. *Lapointe*, 237 Conn. 694, 725, 678 A.2d 942 (en banc), cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996); see also *State* v. *Atkinson*, 235 Conn. 748, 757, 670 A.2d 276 (1996) (*Miranda* warnings not constitutionally required until defendant in custody and subjected to police interrogation); *State* v. *Hoeplinger*, 206 Conn. 278, 287, 537 A.2d 1010 (1988).

Additionally, "[t]he defendant has the burden of proving custodial interrogation . . . before the state must prove that adequate warnings of the rights that inhere in the privilege against self-incrimination were given to

the defendant and that the defendant's waiver of his rights was constitutionally valid . . . . Custodial interrogation [occurs when] questioning [is] initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . . Although the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving *Miranda* protection . . . [a] person is in custody *only if a reasonable person would have believed he was not free to leave.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 76, 621 A.2d 728 (1993).

Finally, "[w]e must look at the totality of the circumstances of the questioning in order to determine whether a reasonable person would have construed those circumstances as placing him in a custody situation. . . . We will not overturn the trial court's factual finding that the defendant was not in custody unless it was clearly erroneous . . . but will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) Id., 76–77.

Applying these principles to the facts of the present case, we conclude that there is substantial evidence in the record to support the court's determination that the defendant was not in custody prior to waiving his *Miranda* rights at the Waterbury police station on August 13, 1995. The defendant voluntarily chose to accompany Aponte to the police station. The police officers did not draw any weapons at any time and the defendant voluntarily got into the backseat of the police car. The defendant was neither arrested nor handcuffed at any time. Furthermore, at the police station, the defendant was allowed to sit in an unlocked room and to observe Aponte in an adjacent room through a glass

partition. The defendant also was given food, soda and cigarettes at his request. In addition, while Smith verbally apprised the defendant of his *Miranda* rights at approximately 2:30 p.m. on August 13, 1995, he also told the defendant that he was not then under arrest and could leave if he chose to do so. The defendant, however, voluntarily chose to remain at the police station. At approximately 6 p.m. and again at approximately 10:15 p.m., Smith and Ricci questioned the defendant, who agreed to provide written statements. Prior to giving these statements, the defendant was apprised of his *Miranda* rights and executed a written waiver of them.

Because our review of the record reveals that a reasonable person in the defendant's situation would not have believed that his movement was restricted to a degree that is associated with a formal arrest, we conclude that the court properly determined that the defendant was not in custody prior to executing the written waiver of his *Miranda* rights.

II

The defendant next claims that the trial court improperly concluded that he was not entitled to *Miranda* warnings once he was interviewed as a suspect in the police station. We disagree.

"A suspect in a crime is not in custody every time he is asked questions at a police station." Id. "Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. *Miranda* v. *Arizona*, [384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]. . . . *State* v. *Williams*, 227 Conn. 101, 112, 629 A.2d 402 (1993); accord *State* v. *DesLaurier*, 230 Conn. 572, 576, 646 A.2d 108 (1994)." (Internal quotation marks omitted.)

*State* v. *Atkinson,* supra, 235 Conn. 757. Having concluded in part I of this opinion that the trial court properly determined that the defendant was not in custody prior to executing the written waiver of his *Miranda* rights and voluntarily giving his written statements, we further conclude that *Miranda* warnings were not required during the earlier police questioning.[3]

### III

The defendant next claims that the trial court improperly admitted two written statements that he gave to police. Specifically, he contends that the statements were tainted and should have been suppressed as the product of his previous oral statements, which he claims were improperly obtained. Having concluded in part I of this opinion that the court properly determined that the defendant was not in custody and, thus, not entitled to *Miranda* warnings prior to executing the written waiver of his *Miranda* rights, we need not address this claim.

Even if we assume arguendo that the oral statements that the defendant made should have been suppressed due to inadequate *Miranda* warnings, the defendant's two incriminating written statements, having been preceded by proper *Miranda* warnings and waivers, were not tainted and rendered inadmissible by the initial failure of the police to administer *Miranda* warnings to the defendant. See *Oregon* v. *Elstad,* 470 U.S. 298, 309, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985) (holding that initial failure to administer *Miranda* warnings to suspect who voluntarily provides incriminating statement, "unaccompanied by any actual coercion" by

[3] Because we conclude that the court properly concluded that the defendant was not in custody and, thus, not entitled to *Miranda* warnings prior to executing the written waiver of his *Miranda* rights, after which he gave his written statements, we need not address the defendant's third claim—that oral statements he made were obtained in violation of his *Miranda* rights.

police officers, does not taint subsequent admissions made after suspect has been fully advised of and waived his *Miranda* rights).

In the present case, the defendant does not claim a violation of his federal constitutional rights under *Elstad*. Rather, the defendant challenges *Elstad* under the state constitution, an argument that we previously have rejected in *State* v. *Corbeil*, 41 Conn. App. 7, 10–13, 674 A.2d 454, cert. granted, 237 Conn. 919, 676 A.2d 1374 (1996) (appeal dismissed on death of defendant). Consequently, the defendant's claim must fail, and we need not address it further.

IV

The defendant's final claim is that his oral statements, which amounted to a confession, were involuntarily given because they were induced by a promise from Ricci, which was not honored, that the defendant would be sentenced to only ten years in prison if he confessed to the August 11, 1995 homicide. The defendant also argues that the timing of his confession, which occurred after he had been questioned by Ricci, supports a conclusion that his confession was not voluntary. We disagree.

We previously have held that "[a] statement is voluntary if it is the product of an essentially free and unconstrained choice by its maker . . . [i]f it is, if he has willed to [make a statement], it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his [statement] offends due process. . . . The question of voluntariness is one of fact for determination by the trial court in the exercise of its discretion, subject to the constitutional standards of due process. . . . The factors taken into account [on voluntariness] when assessing the totality of the circumstances include many of those used when determining the capacity of

the defendant to waive his *Miranda* rights knowingly and intelligently. . . . Among those factors are the defendant's age, intelligence, and his experience with the criminal justice system . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Huckaby*, 47 Conn. App. 523, 529, 706 A.2d 16 (1998).

In the present case, the trial court found that at the time the defendant gave his statements to the police, (1) he was not impaired by drugs, (2) he understood and waived his rights, (3) he had prior experience with the court systems in both Connecticut and Florida because he had been arrested previously in both of these states,[4] (4) no threats or promises had been made to the defendant at the Waterbury police station in exchange for his statements and (5) "there was no conduct by the police such as to overbear his will to resist and bring about a confession not freely self-determined."

Accordingly, we conclude that the trial court's findings were supported by the evidence. The trial court, in assessing the totality of the circumstances, properly determined both that the defendant voluntarily, knowingly and intelligently waived his rights and that he voluntarily gave incriminating oral statements to the police.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The defendant told the police that he had been arrested in Ansonia within the preceding two weeks for marijuana possession and that he had an arrest record in Florida for charges involving larceny and automobile theft.