# STATE OF CONNECTICUT *v.* CHARLES WILLIAMS
## (AC 20043)

Lavery, C. J., and Landau and Mihalakos, Js.

Argued June 1—officially released September 12, 2000

*Carlos E. Candal,* for the appellant (defendant).

*Robin Schwartz,* special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *George Ferko,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Charles Williams, appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a firearm in violation of General Statutes § 53a-217.[1] The defendant claims that the trial court improperly (1) denied his motion to suppress, (2) denied his motion for judgment of acquittal because there was insufficient evidence to allow the jury to find that the firearm possessed by the defendant was operable and (3) refused to give a jury instruction on the defense of nonexclusive possession. We agree with the trial court's denial of the motion to suppress and with its denial of the motion for judgment of acquittal because of insufficient evidence of operability, but we disagree with the court in its refusal to instruct the jury on the defense of nonexclusive possession and, therefore, we reverse the judgment of the trial court.

---

[1] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when he possesses a firearm . . . and (1) has been convicted of . . . a class D felony . . . ." According to the substitute information, the defendant was convicted of a class D felony, namely, burglary in the third degree, prior to this judgment.

The jury reasonably could have found the following facts. On January 26, 1999, Officer Andrew Lawrence of the Hartford police department was driving in his patrol car when he observed the defendant drive through a stop sign. Lawrence activated his lights and siren, called for backup and pursued the defendant. The defendant pulled into a driveway, got out of the car and knocked on the door or rang the doorbell of a home. Soon thereafter, the defendant walked away from the house and proceeded down the street, leaving the car in the driveway.

Lawrence did not follow the defendant. Instead, while monitoring the defendant as he was walking away, Lawrence approached the vehicle and looked through the car window. Inside, he saw a .38 caliber semiautomatic pistol on the driver's seat. Once backup officers arrived, Lawrence pursued the defendant while the car was secured by the other officers. Lawrence caught up with the defendant, who had since rounded a street corner, and arrested him.

The state filed a two count information alleging that the defendant used a motor vehicle without the owner's permission in violation of General Statutes § 53a-119b (a) (1) and that the defendant was in criminal possession of a firearm in violation of § 53a-217 (a) (1). On May 25, 1999, the defendant filed a motion to suppress all items seized by the police. The trial court's signed oral decision on the motion to suppress focused on the issue of whether the "viewing of a weapon in plain view of the driver's seat of a vehicle [constituted] probable cause to arrest the operator of said vehicle for the crime of weapon in a motor vehicle in violation of [General Statutes] § 29-38 of the Connecticut General Statutes."[2] The court denied the motion on July 16, 1999.

[2] Although the defendant's motion to suppress challenged the arrest and search as unlawful, the trial court noted that if the answer to the question of whether viewing the weapon in plain view constituted probable cause to arrest the operator was yes, then the defendant had conceded that the

At the end of the state's case, the defendant moved for a judgment of acquittal on both counts. The trial court granted the motion as to the first count of using a motor vehicle without the owner's permission, but denied the motion as to the second count of criminal possession of a firearm. On July 20, 1999, the defendant filed a request to charge the jury on the theory of nonexclusive possession, which was denied the following day by the court. The jury returned a guilty verdict on July 21, 1999. On July 29, 1999, the defendant moved for a judgment of acquittal after the verdict. The motion was denied on August 27, 1999, and judgment was rendered on the same day. The defendant appealed on September 22, 1999.

I

The defendant first argues that the court improperly denied his motion to suppress. We disagree.

"As a preliminary matter, [o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Casiano*, 55 Conn. App. 582, 586, 740 A.2d 435 (1999), cert. denied, 252 Conn. 942, 747 A.2d 518 (2000), quoting *State* v. *Blackman*, 246 Conn. 547, 553, 716 A.2d 101 (1998).

---

search of his person was lawful incident to his arrest. The court stated that "it follows that the search of the vehicle and recovery of the pistol from the driver's seat would also be lawful." Accordingly, the plain view issue was the only question addressed by the court in its oral decision.

The defendant claims that Lawrence lacked sufficient probable cause to arrest him because Lawrence never gave consideration as to whether a valid permit had been issued to the defendant before arresting him. A similar argument was addressed by this court thirteen years ago in *State* v. *Lizotte*, 11 Conn. App. 11, 525 A.2d 971, cert. denied, 204 Conn. 806, 528 A.2d 1154 (1987). In *Lizotte*, the defendant was stopped by police for a motor vehicle infraction. Id., 13. During the stop, one of the officers scanned the inside of the passenger compartment with a flashlight as part of a routine search for weapons, and he noticed an ammunition belt partially covered by a towel on the floor of the vehicle. Id., 14. On the basis of their suspicions that a weapon might accompany the ammunition, the police conducted a pat-down search of the defendant. Id. The police lifted the towel and discovered a fully loaded pistol. Id. The defendant was arrested and convicted for carrying a weapon in a motor vehicle. Id., 14–15.

Prior to trial, the defendant in *Lizotte* moved to suppress the items seized in his vehicle. This court upheld the trial court's denial of the defendant's motion to suppress. We concluded that the officers' observation of the gun belt with ammunition "constituted sufficient facts or circumstances to support a reasonable belief that the defendant was also carrying a weapon in the vehicle in violation of General Statutes § 29-38 . . . ." Id., 19. This court also held that "[i]n determining whether the police officers had probable cause to arrest the defendant for carrying a weapon in a motor vehicle, we also note that *probable cause may exist even without ascertaining whether the defendant had a permit to carry the weapon discovered.*" (Emphasis added.) Id., citing *Adams* v. *Williams*, 407 U.S. 143, 148–49, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). Just as police in *Lizotte* did not have to ascertain whether the defendant had a permit for the weapon for probable cause to have

existed, the police in this case also did not have to determine whether the defendant had a permit before arresting him.

"[T]o establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict." *State* v. *Cobuzzi*, 161 Conn. 371, 376, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972). *State* v. *Lizotte*, supra, 11 Conn. App. 19, instructs us that police may arrest someone in possession of a weapon without determining whether the possessor has a proper permit, and we decline the defendant's invitation to depart from that precedent. Thus, we conclude that the court properly denied the defendant's motion to suppress.

## II

The defendant next argues that the court improperly denied his motion for judgment of acquittal. The defendant contends that insufficient evidence existed to show that the weapon found in the vehicle was operable. Therefore, the defendant reasons, the court improperly denied his motion for judgment of acquittal on the charge of criminal possession of a firearm in violation of § 53a-217 (a) (1). We disagree.

"The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. *State* v. *Heinz*, 193 Conn. 612, 625, 480 A.2d 452 (1984). The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable inferences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt. *State* v. *Duhan*, 194 Conn. 347, 355, 481 A.2d 48 (1984); *State* v. *Heinz*, supra, 625. The facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sus-

taining the jury's verdict." *State* v. *Candito,* 4 Conn. App. 154, 156–57, 493 A.2d 250 (1985).

Additional facts are necessary to resolve this issue. When the weapon was discovered on the driver's seat of the car, it was jammed. A bullet, which had not been properly ejected, was lodged in the weapon's chamber.

Mike Gaffney, an officer with the Hartford police department's evidentiary services unit, testified that he dislodged the bullet by pulling the slide back on the gun and tapping the bottom. He also testified that it was possible for another bullet to have come up underneath the jammed bullet. Tom Wroniak, an officer with the Hartford police department's career development division's firearms training unit, testified that a jammed weapon is a temporary problem and does not necessarily render a weapon inoperable. Wroniak also successfully test-fired the weapon twice and the weapon did not jam.

Sufficient evidence was presented for the jury to determine that the weapon found was operable for purposes of § 53a-217 (a) (1). The jam in the weapon was merely temporary and could be easily fixed. Indeed, as Gaffney testified, it was possible that a second bullet could have entered the chamber underneath the jammed bullet. In a similar case where a weapon was found jammed but subsequently test-fired successfully, this court concluded that sufficient evidence existed to support a conviction on the charge of carrying a pistol without a permit in violation of General Statutes § 29-35. *State* v. *Zayas,* 3 Conn. App. 289, 299, 489 A.2d 380, cert. denied, 195 Conn. 803, 491 A.2d 1104 (1985); see also annot., 81 A.L.R.4th 745 (1990).

Cumulatively, the evidence before the jury was sufficient to justify the verdict of guilty beyond a reasonable doubt. Even if contrary inferences existed that could have led the jury to believe that the weapon was inoper-

able, the jury was not barred from drawing inferences consistent with guilt where, as here, sufficient evidence existed to do so. *State* v. *Sivri*, 231 Conn. 115, 132–33, 646 A.2d 169 (1994). We therefore conclude that the court's denial of the defendant's motion for judgment of acquittal was proper.

### III

The defendant contends that the court improperly refused to instruct the jury on the theory of nonexclusive possession. We agree.

### A

The state claims that we should not review this claim because it was not properly preserved for appeal. We disagree.

Requests to charge and exceptions to them are governed by Practice Book §§ 42-18 and 42-16. Practice Book § 42-18 (a) provides that when requests to charge are made they shall, among other things, contain "the evidence to which the proposition would apply. . . ." Practice Book § 42-16 provides in part that an appellate court is not bound to review a trial court's failure to give an instruction unless the matter "is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ." The state claims that the defendant has failed to meet both of these requirements.

Regarding Practice Book § 42-18, although the defendant's written request to charge did not state the facts that he believed supported the requested instruction, the court did have the supporting facts for the charge before it, and the defendant's counsel presented oral argument before the court outlining in detail the factual

basis for the defendant's request to charge.[3] Regarding Practice Book § 42-16, the defendant's counsel did not present an exception immediately after the charge was

[3] The following discussion occurred between the court, defense counsel and the assistant state's attorney:

"The Court: All right. Request to charge. Record should reflect we had a charging conference yesterday afternoon after we concluded the court session of the trial. The court is in receipt of defense counsel's request to charge. The state did not file any.

"[Assistant State's Attorney]: Correct.

"The Court: All right. I have reviewed your request to charge and I had indicated to you in chambers, Mr. Candal [defense counsel], that the court is going to proceed with the jury charge as outlined in this Connecticut Selective Jury Criminal Manual.

"And I indicated to you that we review those jury charges and if there was anything that was significantly different from what you had put in your request than those that existed in the manual to bring them to my attention this morning and we would review them.

"[Defense Counsel]: Yes, Your Honor. I would just request the court in considering what we submitted regarding exclusive possession, to consider allowing that request, that instruction to be read. And looking up case law, specifically *Evans* v. *United States* at 257 F.2d 121 at page 128—excuse me—128, Ninth Circuit, cert. denied, then 358 United States 866, a 1958 case, as well as [annot.] 56 A.L.R.3d 948, the year 1974, which reads—also including *State* v. *Alphonso* and *State* v. *Watson*.

"*State* v. *Alphonso* which the court instructed the jury that the defendant was not in exclusive possession of the car where the narcotics were found at the time. In that case, that he was apprehended it may not be inferred that the defendant knew the presence of the narcotics and had control over them unless, one, there were incriminating statements or, two, facts or circumstances tending to buttress such an inference.

"The facts in this case—well, also reading *State* v. *Watson*, which says it cannot be logically and reasonably inferred that the occupant of a motor vehicle knew the presence of an unregistered weapon simply on the fact that he was an occupant. Presence alone unilluminated by other facts is insufficient proof of possession.

"In this case, Your Honor, the evidence has shown that somebody else besides my client had access to that car. The National Car Rental agent came in and testified that a gentleman by the name of Kirk Scott had rented that car, legally had signed for it, was recognized as a legal person, had an ID and had the right to use that car from January 13 til January—at the time of this case at least if not further.

"And there's also evidence that there were keys to that car and there was no evidence that somebody was not supposed to drive that car. There was evidence that somebody had given my client keys to that car. You heard from our witness, Miss Williams, who testified that he didn't even make it

given. Rather, he excepted to the charge before it was given, at the time the court denied his request to include a nonexclusive possession instruction.

We conclude that the defendant has met, or substantially met, the requirements of both of the rules of prac-

to the car, but the fact is that she testified under oath that she saw Mr. Scott who had the keys at a previous point before my client was given them. Obviously he had access to that car.

"And I would submit that this is similar to a case where the police search a home under a warrant and find narcotics or contraband, an illegal substance in a room of a house and the person happens to be staying there over night or even a week or two weeks. Just because he's there and nobody else is there in that room at the time doesn't necessarily mean that nobody else had access to that room. And just like somebody would—you could present evidence in that case that somebody had a legal right as a tenant to be or had ownership to that house and access to that room.

"In that case, you would have insufficient evidence alone by the defendant's mere presence in that room to infer that he had exclusive possession to access to that room. Similarly, in this case, my client might have had the keys but somebody else had the legal right to access the car. And I think that it would be fairer for the jury to hear that they cannot infer that he exercised dominion and control over that weapon merely because he was found with the keys.

"The Court: Well, what I am going to charge them with is that possession means intentional dominion and control over the firearm accompanied by knowledge of its character. Mere presence in the vicinity of the firearm, however, is not enough to establish possession. And if so, if that's what your claim is that will be covered in the charge that I plan on giving. Based on what I have just read to you, which is what the court intends to charge under the definition of possession, do you still want to pursue your exclusive possession request?

"[Defense Counsel]: And perhaps if the court would consider including the fact that no inference can be drawn from mere presence. Is that what's—

"The Court: Well, no. I am going to charge mere presence in the vicinity of a firearm, however, is not enough to establish possession. So to that end I am going to deny the request, your specific request to charge under the exclusive possession section because I think it is adequately covered in the charge that I am going to give under the elements of the crime.

"[Defense Counsel]: Thank you, Your Honor. I'll just, for the record, I will state an exception.

"The Court: Okay. Mr. Ferko [assistant state's attorney], do you have anything?

"[Assistant State's Attorney]: No, Your Honor.

"The Court: Is that your only request?

"[Defense Counsel]: Yes, Your Honor."

tice. Practice Book § 42-16, in stating that an appellate court "shall not be bound to consider error," is permissive, not mandatory. It merely frees this court from the obligation to consider an issue where its requirements are not fulfilled. We choose to consider the defendant's challenge in this case even though we are not bound to do so.

The defendant has not technically complied with Practice Book § 42-18. We will, however, hear the defendant's claim despite his noncompliance. His oral argument to the court on the record, immediately before the court refused his requested instruction, fulfilled the purpose of the rule of practice.

This practice, the nonpenalization of technical noncompliance with the rules of practice, is not without support. In *State* v. *Deptula*, 31 Conn. App. 140, 142, 623 A.2d 525 (1993), appeal dismissed, 228 Conn. 852, 635 A.2d 812 (1994), the defendant claimed that the trial court improperly failed to charge the jury on self-defense. The state challenged the review of that issue on appeal because of the defendant's noncompliance with Practice Book § 852, now § 42-16. *State* v. *Deptula*, supra, 144. Despite the defendant's noncompliance, the *Deptula* court reviewed the defendant's claim on the merits. Id., 147.

Although the defendant in *Deptula* took an exception to the charge after it was given, defense counsel did not state the grounds for the objection at the time it was given. The state claimed that the defendant's exception was insufficient to apprise the trial court of the deficiency in the charge. A careful reading of the transcript in that case showed that the defendant's counsel and the trial court understood the facts relied on for the requested self-defense charge. The *Deptula* court reasoned in part that in light of defense counsel's previous statement during an objection to the introduction of

other evidence, the trial court understood the basis for the defendant's exception to the charge. The court considered the rule of practice that requires counsel to state the grounds for an exception satisfied, stating that "the purpose for that rule has been satisfied in this case because the trial court understood the ground for the objection." Id., 146. The trial court here thought that the defense of nonexclusive possession did not have sufficient factual support and refused to give the requested charge on that defense. We reverse the judgment because the charge must be given any time the facts are in evidence.

We do not intend by our conclusion here to send a signal that the rules of practice are optional and apply only on the whim of counsel. Indeed, we are mindful that in many cases "a trial court's awareness of the factual basis for a requested charge . . . [does not constitute] an acceptable alternative to a party's compliance with the rules of practice." *State* v. *Vega*, 48 Conn. App. 178, 185, 709 A.2d 28 (1998); see also *State* v. *Ramirez*, 16 Conn. App. 284, 289, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988). "[W]hile we would prefer it if the defendant's counsel had drafted a more thorough request to charge, or if he had made a more specific exception, we will review this claim because the defendant has substantially complied with the requirements of Practice Book § 852 [now § 42-16] and the court understood the grounds for the objection. There is no need to hold the defendant to the strict requirement where, as here, the purpose of the rule has been satisfied." *State* v. *Deptula*, supra, 31 Conn. App. 147. We follow *Deptula* and review the defendant's claim on its merits.

B

Regarding the court's refusal to give the defendant's proposed jury instruction, "[i]t is a well established

principle that a defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law. . . . The charge must be correct in the law, adapted to the issues and sufficient to guide the jury. . . . The primary purpose of the charge to the jury is to assist them in applying the law correctly to the facts which they find to be established. . . . On review, we examine the charge to see if it fairly presents the case to the jury in such a way that injustice was not done under the law to the legal rights of the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 560–61, 747 A.2d 847 (2000). "The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." *Velardi* v. *Selwitz*, 165 Conn. 635, 637, 345 A.2d 527 (1974).

The specific issue here is whether the court should have provided the requested jury instruction on nonexclusive possession. The quantum of proof that the defendant must offer to be entitled to a jury instruction on a particular theory of defense is minimal. "As a general rule, a defendant is entitled to have instructions on a defense for which there is evidence produced at trial to justify the instruction, no matter how weak or incredible the claim. *State* v. *Fuller*, 199 Conn. 273, 278, 506 A.2d 556 (1986)." *State* v. *Varszegi*, 236 Conn. 266, 282, 673 A.2d 90 (1996).

Additional facts are necessary to resolve this issue. At trial, the defendant sought to dispute the issue that the weapon found in the car was in his exclusive possession. At the time of his arrest, the defendant was driving a rental car owned by National Car Rental. Tammy Dinatale, a representative of National Car Rental, testified that at the time the weapon was found in the car, the vehicle was rented to another individual, Kirk Scott.

The defense also presented Madeline Williams, the defendant's sister, as a witness. Williams testified as

follows. At approximately 9 a.m. on the morning of the defendant's arrest, Williams drove herself and the defendant out to breakfast in her own car. Afterwards, the defendant asked Williams to bring him to the house of a friend, Scott, to get a compact disc. Williams and the defendant drove to Scott's house, and Williams accompanied the defendant to Scott's residence. Scott handed the defendant a key to the rental car. Williams and the defendant then proceeded to the rental car to retrieve the compact disc from the vehicle. At that point, before Williams and the defendant reached the vehicle, the officer approached the defendant and arrested him.

This testimony contradicted the sequence of events offered by the state and raised the issue of the defense of nonexclusive possession. As a result, it is an alternative view of events that may be considered by the jury that places the question of exclusive ownership in dispute. The defense sought to show, and the jury may have believed, that the defendant did not have exclusive possession of the weapon because Scott was in constructive possession of the car and, thus, the weapon as well. This foundation provided by the defendant is sufficient to require an instruction on nonexclusive possession.

If a defendant raises a defense to a charge and provides any evidence whatsoever to support that defense, the trial court must provide an instruction on that issue if the defendant requests it, and the failure to do so constitutes reversible error. *State* v. *Richardson*, 40 Conn. App. 526, 531–33, 671 A.2d 840 (reversing judgment of trial court for failure to charge on defense), cert. denied, 237 Conn. 905, 674 A.2d 1333, cert. denied, 237 Conn. 910, 675 A.2d 457, cert. denied, 519 U.S. 902, 117 S. Ct. 257, 136 L. Ed. 2d 183 (1996). The testimony of Williams raised the issue of nonexclusive possession. Whether the evidence introduced established that the defendant did not have exclusive possession of the weapon is a question for the jury, not the trial court, to decide. See id., 532; see also *State*

v. *Figueroa*, 235 Conn. 145, 179, 665 A.2d 63 (1995). We therefore conclude that there existed a foundation in the evidence that required the court to instruct the jury on the defense of nonexclusive possession. The court's failure to instruct on the defense constitutes a cause for reversal.

We agree with the court as to the existence of probable cause and that there was sufficient evidence as to the operability of the weapon, but we reverse the judgment of conviction because of the court's failure to charge on the defense of nonexclusive possession and remand the case for a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.