STATE OF CONNECTICUT *v.* SCOTT SMITH
(AC 20829)

Spear, Dranginis and Dupont, Js.

Argued February 13—officially released August 21, 2001

*James B. Streeto*, deputy assistant public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *C. Robert Satti, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Scott Smith, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-

54a (a), sexual assault in the first degree in violation of General Statutes § 53a-70 and sexual assault in the third degree in violation of General Statutes § 53a-72a. On appeal, the defendant claims the trial court improperly (1) failed to instruct the jury on manslaughter in the first degree, General Statutes § 53a-55 (a) (1), as a lesser offense included within the offense of murder, (2) failed to order a mistrial on the basis of prosecutorial misconduct, thereby violating his right to a fair trial, (3) denied his motion to suppress his confession, and (4) instructed the jury on the credibility of witnesses, thereby depriving him of his right to due process, the presumption of innocence and his right to testify. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the evening of May 12, 1995, the defendant went to a bar in Bridgeport, where he consumed several beers and brandy, and met Timothy Solek. The two left for Solek's apartment, where they consumed more alcohol. They later returned to the bar. They then went to the home of the victim, an acquaintance, and the three played cards.

At some point in the evening, the defendant left the room to use the bathroom. When he returned, he found the victim and Solek arguing and pushing each other. The victim yelled at Solek to leave. The defendant then grabbed the victim and placed her in a choke hold. The victim resisted, gasped for air and, finally, fell to the floor.

Solek then kicked the victim in the head repeatedly and hit her in the head with a clothes iron three or four times. He also stabbed her repeatedly with a can opener. The defendant took off his pants and fondled the victim's breasts. Solek had taken off his pants, covered the victim's face with a towel, masturbated, and forcibly had anal and vaginal intercourse with her. Before the

defendant and Solek left, the defendant took the victim's Walkman. They returned to Solek's apartment, where the defendant borrowed a pair of pants. At about 2:30 a.m., Solek called the police and accompanied the responding officer to the victim's apartment, where she was found dead.

The defendant subsequently was arrested at his girlfriend's home, where police recovered a pair of his jeans covered with the victim's blood. The victim's blood also was found under the defendant's fingernails and on his left hand. The defendant gave a signed, written statement at the police station. In the statement, the defendant admitted that he and Solek had been at the victim's apartment, that he got involved in a fight between Solek and the victim, and that he strangled her.[1] When the police detectives who took the defendant's statement asked whether he had killed the victim, the defendant stated, "I guess you could say we both did, but not on purpose." He further admitted in the statement that he took off his pants and that, although he did not have sex with the victim, he fondled her breasts.

At trial, the state put on evidence that showed that the victim's death was caused by strangulation.[2] The

---

[1] The defendant stated in relevant part: "They were hitting each other and then she started to swing at me and I blocked her punch and with my left hand and arm I put her into a neck hold. I was standing behind her. We fell to the floor and [Solek] kicked her in the head a couple of times, she was yelling and screaming and I let go and she took a couple weird breaths and gasps and she sat up and started swinging and I then just put my hands around her and I choked her and she tried to get me off her and we fell again and [Solek] hit her in the head with the iron about three or four times so I let go and picked up the iron and threw it so I could look for my sneaker."

[2] Edward T. McDonough, the deputy chief medical examiner for the state, testified that three curves or scrapes on the victim's neck were consistent with fingernail bruises, and that multiple areas of hemorrhage on her neck muscles, the soft tissue of her breathing tubes and behind her eyes indicated strangulation. McDonough further testified that the evidence showed that the victim had suffered injuries consistent with being struck by an iron and stabbed with a can opener.

defendant testified in his own behalf. The jury, however, found him guilty, and this appeal followed.

## I

The defendant first claims that the court improperly failed to charge the jury on manslaughter in the first degree in violation of § 53a-55 (a) (1) as a lesser offense included within the offense of murder.[3] We disagree.

"There is no fundamental constitutional right to a jury instruction on every lesser included offense . . . rather, the right to such an instruction is purely a matter of our common law." (Citation omitted; internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 260, 681 A.2d 922 (1996). "In *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), [our Supreme Court] held that a defendant is entitled to an instruction on a lesser included offense if he can demonstrate compliance with each of four conditions: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. . . .

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra [588], we view the evidence in the light most favorable

---

[3] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

to the defendant's request for a charge on the lesser included offense. . . . [T]he jury's role as fact-finder is so central to our jurisprudence that, in those cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence. . . . Under *Whistnant*, the evidence is sufficiently in dispute where it is of such factual quality that would permit the [jury] reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal. . . . Nonetheless, jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on the evidence . . . from which inferences can fairly be drawn. . . . They should not [however] be encouraged to engage in speculation. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Ray*, 228 Conn. 147, 152–55, 635 A.2d 777 (1993).

"A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18]. *State* v. *Hall*, 213 Conn. 579, 591, 569 A.2d 534 (1990); *State* v. *Ostroski*, [201 Conn. 534, 556–58, 518 A.2d 915 (1986)]; *State* v. *McIntosh*, [199 Conn. 155, 158–61, 506 A.2d 104 (1986)]." *State* v. *Tomasko*, supra, 238 Conn. 261. Practice Book § 42-18 (a) provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and con-

cisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . ." Our Supreme Court has held that "in the context of a written request to charge on a lesser included offense, [the] requirement of [Practice Book § 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) *State v. Corbin*, 61 Conn. App. 496, 521, 765 A.2d 14, cert. granted on other grounds, 256 Conn. 910, 911, 772 A.2d 1124, 1125 (2001).

As a general rule, "a trial court's awareness of the factual basis for a requested charge . . . [does not constitute] an acceptable alternative to a party's compliance with the rules of practice. *State v. Vega*, 48 Conn. App. 178, 185, 709 A.2d 28 (1998); see also *State v. Ramirez*, 16 Conn. App. 284, 289, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988)." *State v. Williams*, 59 Conn. App. 771, 782, 758 A.2d 400, cert. granted on other grounds, 254 Conn. 952, 762 A.2d 906 (2000). We will, however, review a claim when the defendant has substantially complied with the requirements of Practice Book § 42-18 and the court understood the grounds for the objection. Id., 781–82 (trial court understood factual basis of defendant's request where defense counsel presented oral argument outlining in detail factual basis for request to charge); see *State v. Deptula*, 31 Conn. App. 140, 146, 623 A.2d 525 (1993) (reading of transcript revealed that trial court and defendant's counsel understood facts relied on for requested charge), appeal dismissed, 228 Conn. 852, 635 A.2d 812 (1994).

In the present case, after the close of evidence, the defendant made a request to charge the jury on manslaughter in the first degree by a written motion and took an exception when the court did not give the

requested instruction. The defendant argues that all four conditions of *Whistnant* have been satisfied. The defendant meets the second condition because it is well settled that "manslaughter in the first and second degrees and criminally negligent homicide are lesser included offenses within the crime of murder." (Internal quotation marks omitted.) *State* v. *Rasmussen,* 225 Conn. 55, 66 n.11, 621 A.2d 728 (1993). The state argues that the defendant failed to meet the first, third and fourth conditions.

With respect to the first condition of *Whistnant,* the state, in its brief, argues that the defendant failed to provide in his request to charge any discussion of the evidence that would support an instruction on manslaughter. The state failed, however, to raise that argument at trial. We therefore refuse to consider its claim that the request did not comply with the first condition of *Whistnant.* See *State* v. *Smith,* 35 Conn. App. 51, 60 n.5, 644 A.2d 923 (1994).

"For the third and fourth conditions of *Whistnant* to be satisfied, 'there must be *sufficient* evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense.' " (Emphasis in original.) *State* v. *Sotomayor,* 61 Conn. App. 364, 379, 765 A.2d 1, cert. granted on other grounds, 255 Conn. 952, 770 A.2d 32 (2001). The offense of murder requires that the defendant intentionally cause the death of another; General Statutes § 53a-54a (a); whereas the offense of manslaughter in the first degree provides that a person is guilty when, with intent to cause serious physical injury to another person, he causes the death of such person or of a third person. General Statutes § 53a-55 (a) (1).

The defendant claims that if the court had given the instruction on manslaughter, the jury could have concluded that he had intentionally beaten the victim into

submission so that he could sexually assault her and that this resulted in her death. In support of his claim, he points to his statement to the police that he did not kill the victim on purpose and that there was no evidence of planning.

We conclude that the jury could not have reasonably and logically inferred from the facts that when the defendant strangled the victim he intended only to cause serious injuries. First, we note that the defendant's position at trial was that he not only did not intend to kill the victim, but that he also never intended to injure her. He testified that he merely was a bystander to Solek's attack and that he even attempted to stop Solek. He further testified that he only touched the victim's breasts because Solek forced him to do so. Notwithstanding the defendant's testimony that he had no intent to injure or to kill the victim and his testimony that police inaccurately recorded his statement, he now relies on his statement to police as evidence supporting a manslaughter charge. Furthermore, we are not persuaded that the absence of planning requires us to conclude that the jury reasonably could find that the defendant intended only to injure the victim seriously and that he did not intend to kill her when he strangled her.

Viewing the evidence in the light most favorable to the defendant, we conclude that his state of mind was not sufficiently in dispute so as to entitle him to a jury instruction on manslaughter in the first degree.

## II

The defendant claims that prosecutorial misconduct by the state's attorney in his closing argument requires reversal of the judgment. The defendant concedes that he did not properly preserve the issue of prosecutorial misconduct for appellate review. He therefore seeks

review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4]

The defendant satisfies the first two prongs of *Golding* because an adequate record exists to review his claim and he alleges a constitutional violation. The defendant, however, cannot prevail under the third prong because he cannot demonstrate that a constitutional violation clearly exists that clearly deprived him of a fair trial.

"Prosecutorial misconduct may . . . occur in the course of closing argument. . . . Such argument may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact. . . . *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . Id., 539–40." (Internal quotation marks omitted.) *State* v. *Heredia*, 253 Conn. 543, 561, 754 A.2d 114 (2000).

"[T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. . . . To make this determination, we

---

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

must focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 172, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999).

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. . . . The trial court's ruling is entitled to weight because of the vantage point from which it can observe and evaluate the circumstances of the trial. The trial court is in a better position to determine the propriety of the remarks of counsel and whether or not they are harmful. . . . [T]he trial court's determination that the prosecutor's remarks did not require a new trial must be afforded great weight." (Citation omitted; internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 353, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). "The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial. . . . [T]he trial judge is the arbiter of the many circumstances which may arise during a trial . . . [and] [t]he trial court has a wide discretion in passing on motions for mistrial." (Citations omitted; internal quotation marks omitted.) *State* v. *Festo*, 181 Conn. 254, 265, 435 A.2d 38 (1980). "Scrutiny of a challenged remark made during closing arguments to the jury, therefore, does not occur in a vacuum; an appellate court examines such remarks in light of the entire trial." *State* v. *Rivera*, 61 Conn.

App. 763, 771, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001).

In support of his claim of prosecutorial misconduct, the defendant advances several arguments. He first argues that during closing argument, the state's attorney improperly (1) commented on and criticized him for exercising his constitutional rights, (2) argued that the defense counsel had used unscrupulous tactics to "get off" a guilty client, (3) recast the defendant's case as a personal attack on the prosecution and the police, and (4) argued a theory of the case that was not supported by the evidence, specifically, that the defendant and Solek had attempted to subdue the victim to sexually assault her and that the defendant's intent to kill developed out of that attempt.

The defendant contends that the state improperly and repeatedly referred to the defense counsel by name, and used improper tone and language throughout the closing argument. He takes issue with the following remarks by the state's attorney: (1) a reference to the defendant's case as a "shotgun approach to trying to acquit and get off the client"; (2) a reference to the defendant's approach as, "[L]et's attack the government. Why not? We have nothing to do. Who cares?" and, "Because [the defense counsel] again didn't come at me when he fired the shotgun, but it certainly was meant to hit me because I am part of this prosecution team."

On the basis of our review of the parties' closing arguments, we cannot conclude that the defense counsel did not invite the state's argument to the jury.[5] The

[5] The defense counsel attacked the police investigation in his closing argument, stating, in relevant part: "Now, the police jumped to conclusions early in this case. They had Timothy Solek with him when they arrested [the defendant], focused on [the defendant] to the point that they missed very important clues, focused on [the defendant], that they failed to pay attention to the fact that their sloppy work was affecting their investigation. But jumping to conclusions is often very difficult to avoid because it's usually

defense attorney also referred to the prosecutor by name. The state's attorney's argument was, in large part, in response to the defense counsel's argument that the

---

the easy way out. If the police had not jumped to conclusions, they would have carefully listened to what [the defendant] had to tell them.

\* \* \*

"[Detective John Brenner] admitted he had spoken with [the defendant] for five or ten minutes before he signed the [*Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)] warnings. He could not specifically remember what he discussed, but do not rule out that he had some discussion about the case from the time that [the defendant] signed the *Miranda* rights form to the start of the typing of the statement.

\* \* \*

"[T]he time he started that statement, there existed a forty minute gap. [Detective] Brenner admitted that he and [the defendant] discussed the case during that time, yet none of it was recorded, none of it. First of all, in a case of this importance, if—it's just common sense. If you truly wanted to have an accurate record of what [the defendant] had to say on this day and time about this case, wouldn't you have used an audiotape? Better yet, a videotape? And particularly in this day and time, the fact that this man smelled of alcohol, Brenner and [Detective Joseph Adiletta, who also took the defendant's statement] both said he smelled of alcohol, to talk with [the defendant] for forty minutes plus five to ten more minutes and to record none of it . . . that's inexcusable.

\* \* \*

"You heard [the defendant] repeatedly say in response to the state's attorney grilling about particular answers it was not the complete statement that he had given to [Detective] Brenner. You take any person's statement, any, any of his statements, you take any of your statements, you cut it up, don't record it exactly as it is given, it will be incomplete, out of context and often completely different from the statement that person actually gave."

The defense counsel further criticized Brenner's typing skills and argued: "It is an outrage that a police officer with poor typing skills would not record [the defendant's] statement in some other manner. I should say some manner. This is not a record. It was sloppy. It was lazy. It was incompetent.

\* \* \*

"Unless it was an easy way to make sure that no one could review the accuracy of those assertions. Maybe the thinking was that the only way that the accuracy of that statement could be challenged was by [the defendant's] taking the witness stand. Maybe the thinking was, what chance is there that there would be anyone who would believe him anyway, especially since it seemed logical through the eyes of [Detective] Brenner to jump to his conclusions, to the conclusions to which he jumped. It seemed logical to jump to those conclusions, so why shouldn't other people.

\* \* \*

police and the prosecution had conducted a sloppy investigation and jumped to conclusions. Likewise, the state did not "recast" the defendant's case as an attack on the police and the prosecution.

The defendant argues that the state's argument infringed on his constitutional right to testify and to consult with his attorney. In support of his claim, he points to the following statement by the state's attorney: "[H]e said, I went over my testimony with my lawyer. They practiced. They practiced. I mean, come on." The defendant further contends that the state's attorney improperly criticized him for exercising his right to a jury trial by stating, "[W]ell, of course he says, I am not guilty. Put the state to its burden of proof." The defendant claims that the state's argument implied unscrupulous tactics by the defendant and by his counsel to gain an acquittal.

We conclude that the references to the defendant's exercise of his constitutional right to testify did not invite the fact finder to draw an inference adverse to the defendant solely because of his assertion of that constitutional right. Rather, we conclude that the state was responding to the defendant's argument that the jury should consider his demeanor and conclude that he did not look like someone who could confront Solek. We further conclude that the state also was pointing out to the jury the defendant's interest in the outcome of the case.[6] "[B]y exercising his fifth amendment right

"Although the state's attorney attempted to prevent [the defendant] from providing full explanations, you heard it, constantly cutting him off, wouldn't let him give the full answer, but he did give—get it out, so you were able to hear his full account."

[6] The defense counsel argued in relevant part: "You have observed [the defendant]. You've heard [the defendant]. Now, I ask you, does he appear to have the personality, the type of personality that influences and commands others? Certainly was no influence on Timothy Solek. You heard how Timothy Solek ordered him to bring him a beer when they were in the apartment. Now, maybe [the defendant's] alcohol effective state of mind did not help him. Unfortunately, just judging by looking at [the defendant], what you observed, what you heard, it would appear in the circumstances that he

to testify on his own behalf, it is axiomatic that a defendant opens the door to comment on his veracity." *State v. Alexander*, 254 Conn. 290, 297, 755 A.2d 868 (2000).

We conclude that the state did not call for the defendant to rebut the state's case. The state's argument merely pointed out to the jury that the police and scientific evidence offered by the state and challenged by the defendant in closing argument were not contradicted. Finally, we conclude that the state's closing argument, namely, that the defendant and Solek beat the victim to sexually assault her, is not inconsistent with the state's theory that the defendant intended to kill the victim when he choked her. Therefore, the state's argument was not improper.

Moreover, "[t]he fact that all of the defendant's claims focus on allegedly prejudicial remarks made only during closing argument demonstrates that such comments were not a pervasive quality of the entire proceeding." *State v. Rivera*, supra, 61 Conn. App. 774. We cannot say that in the context of the entire trial; see *State v. Rolli*, 53 Conn. App. 269, 279, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999); that the defendant met his burden of proving that the prosecutor's closing argument deprived him of a fair trial.

### III

The defendant next claims that the court improperly denied his motion to suppress his confession. He argues that his statement was given involuntarily and, therefore, taken in derogation of his *Miranda*[7] rights. We disagree.

"[T]he use of an involuntary confession in a criminal trial is a violation of due process. *Mincey v. Arizona*,

may have had trouble influencing Timothy Solek, even if no alcohol had been involved."

[7] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Miranda* v. *Arizona*, [384 U.S. 436, 461–63, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]; *State* v. *DeAngelis*, 200 Conn. 224, 232, 511 A.2d 310 (1986). The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Pinder*, 250 Conn. 385, 418, 736 A.2d 857 (1999).

"[O]ur Supreme Court has also clarified the proper scope of appellate review of a trial court's determination of voluntariness. . . . To begin, we note the established rule that the [t]rial court's findings as to the circumstances surrounding the defendant's interrogation and confession are findings of fact . . . which will not be overturned unless they are clearly erroneous. . . . In its review of state court determinations of voluntariness, the United States Supreme Court long has concluded that the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination. . . . Consistent with the well established approach taken by the United States Supreme Court, we review the voluntariness of a confession independently, based on our own scrupulous examination of the record. . . . [A]pplying the proper scope of review to the ultimate issue of voluntariness requires us, not to ascertain whether the trial court's finding is supported by substantial evidence, but to conduct a plenary review of the record in order to make an independent determination of voluntariness. . . . Having that clarified standard of review in mind, we now must determine whether the defendant's confession was voluntary.

"We make such a determination by examining the totality of the circumstances surrounding the confession, and determining whether the confession [was] the

product of an essentially free and unconstrained choice by the maker. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Citations omitted; internal quotation marks omitted.) *State* v. *Corbin*, supra, 61 Conn. App. 505–506.

Applying those factors to the present case, we conclude that the facts overwhelmingly support the court's determination that the defendant's confession was voluntary. The defendant was twenty-two years old at the time of his confession, had a tenth or eleventh grade education and had been thoroughly advised of his *Miranda* rights. See, e.g., *State* v. *Lewis*, 60 Conn. App. 219, 248, 759 A.2d 518 (confession voluntary where defendant literate, twenty-one years old and completed three years of high school), cert. denied, 255 Conn. 906, 762 A.2d 911 (2000). The record further indicates that the defendant was unrestrained at the police station in that he was permitted to use the rest room and was given a beverage. See *State* v. *Banks*, 58 Conn. App. 603, 614, 755 A.2d 279 (confession voluntary where defendant had unrestrained access to telephone, rest room), cert. denied, 254 Conn. 923, 761 A.2d 755 (2000); see also *State* v. *Hafford*, 252 Conn. 274, 299, 746 A.2d 150 (defendant unrestrained and confession voluntary where he was given soda, cigarette), cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000). The court also properly rejected the defendant's claim that he was so intoxicated as to render his confession involuntary. Police detectives testified that the defendant spoke clearly and did not exhibit any signs of intoxication. See *State* v. *Downey*, 45 Conn. App. 148, 163, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997). Furthermore, he gave a detailed account of the

crime and responded appropriately to each of the officer's questions.

On the basis of our plenary review of the entire record, we conclude that the defendant's confession was voluntarily made to the police.

## IV

The defendant claims that the court improperly instructed the jury on the credibility of the witnesses, thereby violating his constitutional right to due process, the presumption of innocence and his right to testify. The defendant claims that when the court instructed the jury on the credibility of the witnesses, it singled out the defendant as a witness and established a different standard for evaluating his credibility by instructing the jury to consider his interest in the outcome of the case. Specifically, the defendant argues that the court's instruction was not evenhanded because it instructed the jury to consider his interest in the outcome of the case, but did not instruct the jury to consider the other witness' interests in the outcome and, furthermore, because it instructed the jury that in considering his interest, it should compare his testimony to the other evidence adduced at trial. We disagree.

"In order to preserve a claim related to the giving of or failure to give a jury instruction, a party is obligated either to submit a written request to charge covering the matter or to take an exception immediately after the charge is given." (Internal quotation marks omitted.) *Barry* v. *Posi-Seal International, Inc.*, 36 Conn. App. 1, 8, 647 A.2d 1031, cert. denied, 231 Conn. 942, 653 A.2d 822 (1994).

In this case, the defendant submitted a general request to charge regarding the credibility of the witnesses; however, because he did not take an exception to the court's instruction, the court was not apprised

of the alleged deficiency of the charge. Therefore, the defendant's claim is not preserved for appeal. Because his claim was not preserved, the defendant seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.[8] The defendant claims a deprivation of a constitutional right; *State* v. *Williams*, 220 Conn. 385, 396–97, 599 A.2d 1053 (1991); and there is a record. We therefore will review the defendant's assertion.

The defendant's claim that he was "singled out" by the court, resulting in his testimony being more heavily scrutinized than that of other witnesses, is not supported by the record. Our review of the record indicates that the court gave a balanced and thorough instruction regarding the credibility of witnesses in general, regarding the defendant as a witness and directing the jury to treat him as it would any other witness. We previously have upheld similar instructions that were challenged as not being "evenhanded." See, e.g., *State* v. *Scarpiello*, 40 Conn. App. 189, 201, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996); *State* v. *Colon*, 37 Conn. App. 635, 640, 657 A.2d 247 (1994), cert. denied, 234 Conn. 911, 660 A.2d 354 (1995); *State* v. *Brown*, 35 Conn. App. 699, 713–14, 647 A.2d 17, cert denied, 231 Conn. 932, 649 A.2d 254 (1994); see also *State* v. *Williams*, supra, 220 Conn. 385. "[I]n the absence of a fair indication to the contrary, [the jury] is presumed to have followed the instructions of the court." (Internal quotation marks omitted.) *State* v. *Mills*, 57 Conn. App. 202, 212, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000).

We conclude that there was no constitutional violation and that the defendant was not deprived of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] See footnote 4.