## STATE OF CONNECTICUT *v.* SCOTT SMITH
## (SC 16606)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

 

*(Two justices dissenting in one opinion)*

Argued December 9, 2002—officially released March 4, 2003

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, was *Jonathan Benedict*, state's attorney, and *C. Robert Satti, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The sole issue in this certified appeal is whether the Appellate Court, in affirming the defendant's conviction of murder in violation of General Statutes § 53a-54a (a),[1] properly determined that the trial

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, *with intent to cause the death of another person,* he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided

court was not required to instruct the jury on the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[2] We conclude that the trial court was required to give the instruction and, accordingly, we reverse the judgment of the Appellate Court.

The defendant was charged with one count of murder in violation of § 53a-54a (a), one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[3] one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3),[4] and one count of sexual assault in the third degree in violation of General statutes § 53a-72a (a) (1).[5] After a jury trial, the defendant was convicted of murder and sexual assault in the first degree and third degree, and was sentenced to a total of sixty years imprisonment. Thereafter, the defendant appealed from the judgment

nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime." (Emphasis added.)

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) *With intent to cause serious physical injury to another person,* he causes the death of such person or of a third person . . . ." (Emphasis added.)

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[4] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (3) such other person is physically helpless . . . ."

[5] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person . . . ."

of conviction to the Appellate Court, which affirmed the defendant's convictions. *State* v. *Smith*, 65 Conn. App. 126, 128, 782 A.2d 175 (2001).[6] We then granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial court was not required to instruct the jury on the lesser included offense of manslaughter in the first degree?" *State* v. *Smith*, 258 Conn. 930, 783 A.2d 1032 (2001).

The jury reasonably could have found the following relevant facts, as set forth in the opinion of the Appellate Court. "In the evening of May 12, 1995, the defendant went to a bar in Bridgeport, where he consumed several beers and brandy, and met Timothy Solek. The two left for Solek's apartment, where they consumed more alcohol. They later returned to the bar. They then went to the home of the victim, an acquaintance, and the three played cards.

"At some point in the evening, the defendant left the room to use the bathroom. When he returned, he found the victim and Solek arguing and pushing each other. The victim yelled at Solek to leave. The defendant then grabbed the victim and placed her in a choke hold. The victim resisted, gasped for air and, finally, fell to the floor.

"Solek then kicked the victim in the head repeatedly and hit her in the head with a clothes iron three or four times. He also stabbed her repeatedly with a can opener. The defendant took off his pants and fondled the victim's breasts. Solek had taken off his pants, covered the victim's face with a towel, masturbated, and forcibly had anal and vaginal intercourse with her. Before the defendant and Solek left, the defendant took the vic-

---

[6] The defendant initially had appealed from the trial court's judgment to this court. We transferred that appeal to the Appellate Court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

tim's Walkman. They returned to Solek's apartment, where the defendant borrowed a pair of pants. At about 2:30 a.m., Solek called the police and accompanied the responding officer to the victim's apartment, where she was found dead.

"The defendant subsequently was arrested at his girlfriend's home, where police recovered a pair of his jeans covered with the victim's blood. The victim's blood also was found under the defendant's fingernails and on his left hand. The defendant gave a signed, written statement at the police station. In the statement, the defendant admitted that he and Solek had been at the victim's apartment, that he got involved in a fight between Solek and the victim, and that he strangled her.[7] When the police detectives who took the defendant's statement asked whether he had killed the victim, the defendant stated, 'I guess you could say we both did, but not on purpose.' He further admitted in the statement that he took off his pants and that, although he did not have sex with the victim, he fondled her breasts.

"At trial, the state put on evidence that showed that the victim's death was caused by strangulation.[8] The

---

[7] "The defendant stated in relevant part: 'They were hitting each other and then she started to swing at me and I blocked her punch and with my left hand and arm I put her into a neck hold. I was standing behind her. We fell to the floor and [Solek] kicked her in the head a couple of times, she was yelling and screaming and I let go and she took a couple weird breaths and gasps and she sat up and started swinging and I then just put my hands around her and I choked her and she tried to get me off her and we fell again and [Solek] hit her in the head with the iron about three or four times so I let go and picked up the iron and threw it so I could look for my sneaker.'" *State* v. *Smith*, supra, 65 Conn. App. 129 n.1.

[8] "Edward T. McDonough, the deputy chief medical examiner for the state, testified that three curves or scrapes on the victim's neck were consistent with fingernail bruises, and that multiple areas of hemorrhage on her neck muscles, the soft tissue of her breathing tubes and behind her eyes indicated strangulation. McDonough further testified that the evidence showed that the victim had suffered injuries consistent with being struck by an iron and stabbed with a can opener." *State* v. *Smith*, supra, 65 Conn. App. 129 n.2.

defendant testified in his own behalf. [See footnote 24 of this opinion.] The jury, however, found him guilty, and [the defendant's] appeal followed." *State* v. *Smith*, supra, 65 Conn. App. 128–30.

On appeal to the Appellate Court, the defendant claimed that the trial court improperly had refused to instruct the jury on the lesser included offense of manslaughter in the first degree.[9] Id., 128. The Appellate Court applied the conjunctive four prong test set forth by this court in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), under which "a defendant is entitled to an instruction on a lesser included offense if he can demonstrate compliance with each of four conditions: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 65 Conn. App. 130; *State* v. *Ray*, 228 Conn. 147, 152, 635 A.2d 777 (1993). Although both parties conceded that the second prong of the *Whistnant* test had been satisfied, the state argued that the defendant failed to meet the first, third and fourth prongs of the test. *State* v. *Smith*, supra, 133.

---

[9] In addition to the certified issue that we address in this opinion, the defendant also raised, in the Appellate Court, the following claims: (1) prosecutorial misconduct; (2) that his statement to the police was involuntary and should have been suppressed; and (3) improper jury instructions on witness credibility. *State* v. *Smith*, supra, 65 Conn. App. 128.

The Appellate Court declined to address the state's argument that, by not providing "in his request to charge any discussion of the evidence that would support an instruction on manslaughter," the defendant failed to satisfy the first prong of *Whistnant*. Id. The Appellate Court, relying on its decision in *State* v. *Smith*, 35 Conn. App. 51, 60 n.5, 644 A.2d 923 (1994), concluded that, because the state did not make that claim in the trial court, it could not do so on appeal. *State* v. *Smith*, supra, 65 Conn. App. 133.

The Appellate Court then shifted its analysis to the third and fourth prongs of *Whistnant*. It relied on its decision in *State* v. *Sotomayor*, 61 Conn. App. 364, 379, 765 A.2d 1, appeal dismissed, 260 Conn. 179, 794 A.2d 996, cert. denied, 537 U.S. 922, 123 S. Ct. 313, 154 L. Ed. 2d 212 (2002), for the proposition that, "[f]or the third and fourth conditions of *Whistnant* to be satisfied, there must be *sufficient* evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense." (Emphasis in original; internal quotation marks omitted.) *State* v. *Smith*, supra, 65 Conn. App. 133. Applying this rule, the court rejected the defendant's contention that his statement to the police, as well as the lack of any evidence of planning or premeditation, constituted sufficient evidence to justify an inference that the defendant "had intentionally beaten the victim into submission so that he could sexually assault her and that this resulted in her death." Id., 133–34. The Appellate Court, instead, placed greater emphasis on the defendant's position at trial, namely, that "he not only did not intend to kill the victim, but that he also never intended to injure her," than on the inferences that could be drawn from his statement to the police.[10] Id., 134. Ultimately,

[10] The Appellate Court also noted that the defendant "testified that he merely was a bystander to Solek's attack and that he even attempted to stop Solek. He further testified that he only touched the victim's breasts because Solek forced him to do so. Notwithstanding the defendant's testimony that he had no intent to injure or to kill the victim and his testimony that

the Appellate Court concluded, even "[v]iewing the evidence in the light most favorable to the defendant . . . his state of mind was not sufficiently in dispute so as to entitle him to a jury instruction on manslaughter in the first degree"; id.; and, accordingly, affirmed the trial court's judgment of conviction. Id., 144. This certified appeal followed.

I

In *State* v. *Corbin*, 260 Conn. 730, 744–46, 799 A.2d 1056 (2002), we reiterated the well established principles governing whether a defendant is entitled to a lesser included offense instruction under the *Whistnant* test: "This court repeatedly has recognized that '[t]here is no fundamental constitutional right to a jury instruction on every lesser included offense . . . .' *State* v. *Whistnant*, [supra, 179 Conn. 583]. Rather, the right to such an instruction is purely a matter of our common law. 'A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.' Id., 588.

" 'In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra,

---

police inaccurately recorded his statement, he now relies on his statement to police as evidence supporting a manslaughter charge." *State* v. *Smith*, supra, 65 Conn. App. 134.

179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense.' . . . *State* v. *Tomasko*, 238 Conn. 253, 260–61, 681 A.2d 922 (1996)."

The *Whistnant* test is conjunctive, requiring satisfaction of all four prongs. The defendant claims that he has done so. The state contends that the defendant failed to satisfy the first, third and fourth prongs of the test. Inasmuch as each prong has spawned its own voluminous body of case law, we consider separately the claims of the state and the defendant under each prong.[11] We conclude that the defendant satisfied all four prongs, and, accordingly, that the Appellate Court improperly determined that the defendant was not entitled to have the trial court instruct the jury on the lesser included offense of manslaughter in the first degree.

## II

The first prong of the *Whistnant* test requires that either the state or the defendant request "an appropriate instruction." *State* v. *Whistnant*, supra, 179 Conn. 588. The state claims that the defendant's written request to charge did not satisfy the first prong of the *Whistnant* test because, by not complying with the requirements of Practice Book § 42-18,[12] the request did not ade-

---

[11] It is undisputed that the defendant satisfied the second prong of the *Whistnant* test. It is well established that first degree manslaughter is a lesser included offense of murder. See, e.g., *State* v. *Rasmussen*, 225 Conn. 55, 66 n.11, 621 A.2d 728 (1993).

[12] Practice Book § 42-18 provides: "(a) When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply*. Requests to charge should not exceed fifteen in number unless, for good cause shown, the judicial authority permits the filing of an additional number. If the request is granted, the judicial authority shall apply the

quately alert the trial court to evidence that supported his proposed lesser included offense instruction. The defendant claims that his written request, taken together with a colloquy with the trial court and a post-instruction exception, satisfies the first prong of the *Whistnant* test. We agree with the defendant.[13]

The following additional facts are relevant to the disposition of the defendant's claim. The defendant filed a written request to charge with the trial court.[14] Three days later, the trial court conferred with the state and

proposition of law to the facts of the case.

"(b) A principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper." (Emphasis added.)

[13] The state offers, as an alternate ground for affirming the judgment of the trial court, that the Appellate Court improperly refused to consider the state's first prong claims on the ground that in the trial court, the state did not offer any first prong-based opposition to the defendant's written request. The Appellate Court concluded that the state, by not raising in the trial court any opposition to the defendant's written request based on the first prong of *Whistnant*, waived those claims. *State* v. *Smith*, supra, 65 Conn. App. 133. The state contends that this conclusion was improper because a prevailing party has no obligation to preserve arguments for use in defending its opponent's appeal, and that a reviewing court is always free to consider alternate grounds for affirming a lower court's ruling. We need not, however, reach the merits of the state's contentions because, in any event, our independent analysis leads us to conclude that the defendant satisfied the first prong of *Whistnant*.

[14] The defendant's request to charge provided in relevant part: "In order to sustain a conviction for [m]anslaughter in the [f]irst [d]egree . . . the [s]tate must first prove beyond a reasonable doubt that the [d]efendant had the specific intent to cause serious physical injury. . . . [A] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . . Serious physical injury is defined . . . as 'physical injury which creates a substantial risk of death or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ.' . . .

"Therefore, in order to prove the lesser included offense of [m]anslaughter in the [f]irst [d]egree . . . the [s]tate must prove beyond a reasonable doubt that the [d]efendant intended to cause serious physical injury to [the victim] and, having the conscious objective to cause such serious physical injury, he caused the death of [the victim]."

the defendant about the proposed jury instructions. At this conference, both parties and the court engaged in a lengthy discussion about the proposed manslaughter charge, including its factual basis and the applicable law.[15] The state informed the court and defense counsel

[15] We set forth, in its entirety, this colloquy between the trial court and the attorneys for the state and the defendant:

"[State's Attorney]: If the issue is [§ 53a-55 (a) (1)], serious physical injury, manslaughter is—no evidence to convince us—

"The Court: What would you need to satisfy yourself it is a proper lesser included charge?

"[State's Attorney]: It would be a contest as to the evidence of the facts of the killing. There is no contest. The defendant just claims he didn't commit the crime. The other person committed the crime and there is no evidence that even when that other person committed the crime in alternative means, that is with an intent to cause serious physical injury and she dies, whoever choked her intended to kill her.

"The Court: That's what the issue has been over the years on the intent of an actor and in the commission of crime. It first used to crop up in my mind with the assault. I remember there was a case in Norwalk and the Supreme Court allowed for the jury to play around with the intent exhibited in the mind of the actor where he is firing indiscriminately the gun into the body of the victim. The guy survived, but I didn't find it to be assault in the first degree. I didn't know how you could maintain two distinct intents at the same time, but that had been they ruled that you could have two intents and so has been done away with.

"Now, we have this. We have in this case an accessorial liability in the attempt to commit a murder. The statement of the accused indicates that he participated in the murder. His testimony here in contradiction to the statement doesn't admit to participation in the crime. What about the position of putting his hands around her neck, didn't he admit that on the stand?

"[Defense Counsel]: On the stand he stated that he put the hands on the shoulder.

"The Court: On the shoulder?

"[Defense Counsel]: Right.

"The Court: So he is trying to isolate himself, if at all; he is probably telling the truth that he didn't strangle her at all. He denies that.

"[Defense Counsel]: Right.

"The Court: She died, we know, by strangulation.

"[Defense Counsel]: Right.

"The Court: If he didn't kill her, who killed her? Solek. And if Solek killed her, he did so with the assistance of himself and his accessory defendant.

"I don't think I will charge on manslaughter. I don't see where there is any evidence that is in dispute as to that claim being raised by the defense. It's a narrow, thin line. . . . I think the courts are taking a better look at

that it had not received a copy of the defendant's proposed charge. Although the trial court inquired about why the state had not received a copy of the proposed charge, the state represented that it could proceed at the conference without it. After some discussion about

it. If—you used to, if you hit one of the four prongs of *Whistnant* that they let the defendant serving—they let him have an opportunity of persuading them on that issue, but I have seen in recent cases there have been some judges who have made an appellate determination of the facts and found that there was not sufficient evidence, any evidence usually, to go to the jury on an issue of a lesser included offense.

"Now, if we take a look at the statute, it says . . . a person is guilty of manslaughter in the first degree when you have to have an intent to cause serious physical injury to a person, [the victim], and [the defendant] caused the death of such [victim]. No. There is no conflict in the evidence in regard to that. He denies it and the state's claim is that he didn't intend to cause any serious physical injury, that he intended to kill her. How do you prove that in this case? You take his statement, if they find it's persuasive, and you take the reasonable and logical inferences drawn from the manner and the extent of the conduct of the accused in relation to causation. The cause of death, strangulation. So there is no shoulder injury here that we are concerned with. We are talking about a strangulation by garroting her neck. Do you think you could support that? [State's Attorney], it is your test.

"[State's Attorney]: I haven't seen the request, but I think the evidence, the analysis—

"The Court: You haven't seen the request to charge?

"[State's Attorney]: No, sir.

"The Court: Didn't you serve a copy on the state?

"[Defense Counsel]: I delivered it in the state's office on Friday.

"[State's Attorney]: Well, I didn't get a copy.

"[Defense Counsel]: Myself, personally.

"[State's Attorney]: It's no problem. I didn't get a copy of it. I can work without it. I think that the analysis the court indicated which the more recent cases indicate there has to be evidence of dispute. The claim is he did not commit the crime. That is one version. The other version is [that] he choked her and there is a reasonable inference to be drawn on choking. There was an intent to cause death. He started choking and stopped. She had a weird breath and he went back to choking. We are not talking about accidental killing, a couple of bullets fired around a group of people and one person gets struck. The issue is intent here. The case is rather clear, the manner of death and cause. The only reason is the intent.

"The Court: I will not charge on the lesser included. I thought about it on the luncheon recess. And is there anything else you want to put on the record here? . . . Now, about the charge, is there anything that I should cover?

the facts of the case and the differing mental states of murder and manslaughter as applied to the evidence of the defendant's conduct, the court denied the defendant's request to charge the jury on manslaughter in the first degree as a lesser included offense. After the jury was instructed, the defendant took an exception to the trial court's refusal to charge on the lesser included offense of manslaughter in the first degree.[16]

It is well settled that, "[a] proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18]. . . . We previously have held, in the context of a written request to charge on a lesser included offense, [that the] requirement of [§ 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Citation omitted; internal quotation marks omitted.) *State* v. *Corbin,* supra, 260 Conn. 746–47; accord *State* v. *McIntosh,* 199 Conn. 155, 158–59, 506 A.2d 104 (1986). For example, in *Corbin,* we concluded that the defendant did not satisfy the first prong of *Whistnant* because his written request was "confusing"; *State* v. *Corbin,* supra, 747; as it did not follow the rules of § 42-18 requiring a separate paragraph for each requested instruction and a "complete statement of the essential facts to justify the charge as requested." Id., 746. This court favors adherence to the prescriptions of § 42-18 to further that section's purpose of making instructional requests less confusing. Id. Indeed, we have stated that "[w]hile [we do] not favor

---

"[State's Attorney]: No, sir.

"[Defense Counsel]: Nothing, Your Honor."

[16] In taking his exception, defense counsel stated: "The final [exception] is I [listed] in a prejury charge discussion, and on the whole issue of the lesser included offense, with regards to manslaughter one, it is a stretch and I would [with] sympathy hang my hat on . . . *State* v. *Smith,* [185 Conn. 63, 441 A.2d 84 (1981)]."

unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. The minor burden of cooperation imposed by [Practice Book § 42-18] is neither unreasonable nor novel." (Internal quotation marks omitted.) Id., 747.

In the present case, as the defendant conceded at oral argument before this court, the written request to charge, though containing ample citations to relevant legal authority, lacked a statement of the essential facts and, therefore, did not comply completely with the provisions of Practice Book § 42-18. This does not mean, however, that the defendant has not satisfied the first prong of *Whistnant*. Although strict compliance with the provisions of § 42-18 is certainly the least perilous method of satisfying *Whistnant*'s first prong, failure to do so is not, by itself, fatal to the defendant's claim. We have deemed the first prong of *Whistnant* satisfied when the record indicates that "the trial court knew the precise point to which the defendant wished to call attention." (Internal quotation marks omitted.) *State* v. *Arena*, 235 Conn. 67, 77, 663 A.2d 972 (1995); id. (noting written request adequately drew trial court's attention to relevant facts when legal basis for lesser included offense charge had been discussed previously in chambers; emphasizing that "trial court was aware of the defendant's request prior to formulating its charge and thus was afforded the time to scrutinize the requests"). Indeed, even partial compliance with § 42-18, accompanied by substantial additional support in the record from either party, such as detailed colloquies with the court and opposing counsel and a postcharge exception, will also satisfy the first prong of *Whistnant*. This is true as long as the trial court is informed adequately of the factual and legal bases for the instructional request. Compare *State* v. *Ray*, supra, 228 Conn. 153 n.7 (first

prong satisfied despite written request lacking statement of supporting evidence when defendant took post-charge exception; noting "statement by the trial judge that he had reviewed the evidence and decided not to give the requested charge"), *State* v. *Herring*, 210 Conn. 78, 105 n.25, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989) (first prong satisfied despite noncompliant written instruction when "defense counsel, upon inquiry to the trial court, had been reassured that he need not file a formal, written request to charge and that his oral request sufficed"), *State* v. *Faria*, 47 Conn. App. 159, 182–83, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998) (first prong satisfied despite incomplete factual statement in written request when trial court was aware of "legal and factual basis for the request to charge" via off-record chambers conference and on-record colloquy) and *State* v. *Preston*, 46 Conn. App. 778, 783, 700 A.2d 1190 (1997) ("defendant's written request to charge and the colloquy between the court and defense counsel complied with the first prong of *Whistnant* and sufficiently alerted the trial court of the basis for the request"), rev'd on other grounds, 248 Conn. 472, 728 A.2d 1087 (1999), with *State* v. *Corbin*, supra, 260 Conn. 746–47 (first prong not satisfied when written request failed to comply with Practice Book § 42-18; no indication that trial court was otherwise aware of factual or legal bases for defendant's request).[17]

In the present case, despite the deficiency in the written request, the colloquy among the trial court, the

[17] See also *State* v. *Tomasko*, supra, 238 Conn. 262–63 (first prong not satisfied when written request's factual statement did not provide facts distinguishing lesser included offense from charged offense; no other indication that trial court was otherwise aware of factual or legal bases for defendant's request); *State* v. *Hall*, 213 Conn. 579, 590–91, 569 A.2d 534 (1990) (first prong not satisfied when written request had insufficient factual statement and no indication that trial court was otherwise aware of factual or legal bases for defendant's request, even though defendant took postcharge

state and the defendant indicates that the trial court was aware of and understood the facts underlying the defendant's request for the lesser included manslaughter instruction.[18] The trial court, during the colloquy, acknowledged the significance of the defendant's statement in the context of the request. Moreover, after the jury was charged, the defendant took an exception, further alerting the trial court to his disagreement with the refusal to give the lesser included offense instruction. Because the record in the present case demonstrates that the trial court's attention amply was drawn to the factual and legal bases for the request to charge on the lesser included offense, we conclude that the defendant requested an "appropriate instruction," thereby satisfying the first prong of *State* v. *Whistnant*, supra, 179 Conn. 588.[19]

## III

Despite being conceptually distinct parts of the *Whistnant* formulation, the third and fourth prongs are subject to the same evidentiary analysis. *State* v. *Crafts*,

exception); *State* v. *McIntosh*, supra, 199 Conn. 160–61 (first prong not satisfied when written request had no facts and failed to comply with Practice Book § 42-18; no indication that trial court was otherwise aware of factual or legal bases for defendant's request).

[18] Indeed, the fact that the state was willing to proceed without a copy of the written request indicates its familiarity with the facts of the case, as well.

[19] The state contends that the colloquy among the trial court and counsel indicates that the court sought, but did not receive, assistance from counsel in determining the factual basis for the defendant's requested instruction. Specifically, the state claims that the defendant did not adequately alert the trial court to the factual basis for its request because the defendant remained silent when the trial court stated, during the colloquy, that there was no conflict in the evidence about the defendant's intent. We disagree with the state's interpretation of the record. Our review of the record indicates that the trial court was well aware of the intent issue and the facts before it that supported the defendant's request. Indeed, during the colloquy, the trial court compared the defendant's statement with the "reasonable and logical inferences drawn from the manner and the extent of the conduct of the accused in relation to . . . [t]he cause of death, strangulation."

226 Conn. 237, 250–51, 627 A.2d 877 (1993). We will, therefore, analyze them simultaneously. The third prong of *Whistnant* requires that "there [be] some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense . . . ." *State* v. *Whistnant,* supra, 179 Conn. 588. The fourth prong requires that "the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser."[20] Id.

The defendant, relying on this court's decision in *State* v. *Sivri,* 231 Conn. 115, 138–40, 646 A.2d 169 (1994), claims that his statement to the police, offered into evidence by the state, is sufficient to "prove that he acted with a lesser intent than that of the specific intent to kill" and sustain a conviction for manslaughter in the first degree. The state contends that the defendant has not satisfied the third or fourth prongs of *Whistnant* because he failed to advance any arguments at trial that he had acted with intent to cause serious physical injury, positing instead general denials of any criminal intent or responsibility for the victim's death. The state also claims that the defendant's reliance on *Sivri* is misplaced because, when that case was argued before this court, the exact manner of the victim's death was unknown. We agree with the defendant.

"In *State* v. *Rasmussen,* 225 Conn. 55, 65–73, 621 A.2d 728 (1993), we . . . reviewed the standard of evi-

---

[20] "This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal." (Internal quotation marks omitted.) *State* v. *Preston,* supra, 248 Conn. 478. It is effectuated through the "acquit first rule," under which "the [trial] court must direct the jury to reach a unanimous decision on the issue of guilt or innocence of the charged offense before going on to consider the lesser included offenses." *State* v. *Sawyer,* 227 Conn. 566, 579, 630 A.2d 1064 (1993).

dence required to satisfy the [third and fourth prongs] of the *Whistnant* test. We there held that 'there must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense.' " *State v. Crafts*, supra, 226 Conn. 251. Although "[we] expressly [reject] the proposition that a defendant is entitled to instructions on lesser included offenses based on merely theoretical or possible scenarios"; *State v. Arena*, supra, 235 Conn. 78; we will, however, "consider the evidence available at trial in. the light most favorable to the defendant's request. . . . [T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) *State v. Rasmussen*, supra, 68.

Lesser included offense instructions are frequently appropriate in cases when the defendant is charged with murder. This is because "[t]he critical element distinguishing murder from its lesser included offenses is intent, 'often the most significant and, at the same time, the most elusive element of the crime charged.' *State v. Rodriguez*, [180 Conn. 382, 404, 429 A.2d 919 (1980)]. We must determine if the 'evidence suggests at least a possibility' that the defendant acted with a lesser intent than that of the specific intent to kill. *State v. Falby*, 187 Conn. 6, 30, 444 A.2d 213 (1982). If 'we cannot as a matter of law exclude this possibility'; id.; then the defendant was entitled to lesser included offense instructions." *State v. Sivri*, supra, 231 Conn. 138–39.

To gain a better illustration of the degree of proof needed to satisfy the third and fourth prongs of the *Whistnant* test, we begin our analysis by parsing this

court's opinion in *State* v. *Sivri*, supra, 231 Conn. 137–40. In *Sivri*, the defendant appealed from a murder conviction, claiming that the trial court improperly refused to instruct the jury on lesser included offenses, including manslaughter in the first degree. Id., 137. In that case, the victim's body and any evidence of it was still missing at the time of trial.[21] Id., 125. Large, partially cleaned, quantities of blood that matched the victim's blood type, the victim's earring, and hairs similar to those of the victim, were found in the defendant's home three days after her disappearance.[22] Id., 121–24. The victim's blood also was present in the defendant's car. See footnote 22 of this opinion. Moreover, beyond the defendant's attempts to conceal or destroy evidence of

[21] The victim's skull, and some small bones, subsequently were found, with evidence of a gunshot wound to the head, prior to the defendant's second trial. See *State* v. *Sivri*, 46 Conn. App. 578, 580, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

[22] In *Sivri*, the defendant arranged, though a massage service, to have a masseuse come to his home. *State* v. *Sivri*, supra, 231 Conn. 118. The masseuse went to the defendant's home for the appointment and did not follow her employer's safety policy by calling in at the conclusion of the appointment. Id., 119. A newspaper carrier confirmed her van at the defendant's home. Id. After repeated, unsuccessful attempts to contact the victim by calling the defendant's home, her employer contacted the police. Id. The police found neither the defendant's nor the victim's vehicle at the defendant's home. Id., 120. The victim's van subsequently was found eight to ten miles from the defendant's home. Id. The defendant's car was found one week after the victim's disappearance, stripped of its license plates. Id., 124. Numerous, partially cleaned, bloodstains were found in the car, which was missing its standard floor mats. Id.

Three days after the victim's disappearance, the police obtained a warrant and searched the defendant's home, finding human bloodstains and spatters of the victim's type scattered throughout the house. Id., 121. The police found one bloodstain that, alone, would have "constitute[d] one fourth to one fifth of the blood in the body of a woman of medium build." Id., 122. The police also noted attempts to clean up the blood throughout the house. Id., 122–23. The police also found one of the victim's earrings and hair similar to the victim's, in the house. Id., 123–24. Despite a search of a ten mile radius from the defendant's residence, the victim's body was never found, and the state forensic scientist, therefore, could not say what caused the victim's injuries. Id., 123.

the act, the state presented additional evidence relevant to the defendant's consciousness of guilt, including his flight and subsequent use of several aliases. *State* v. *Sivri*, supra, 125–26.

This court concluded therein that, although there was sufficient evidence to prove, beyond a reasonable doubt, that the defendant had the specific intent to cause the victim's death,[23] the defendant had, nevertheless, satisfied the third and fourth prongs of *Whistnant*. Id., 139–40. Noting the critical nature and fine distinctions of the intent element in differentiating the various homicide crimes, this court "agree[d] with the defendant that the evidence was such as to permit the jury to infer that there was also a possibility that there was a sudden or spontaneous incident . . . resulting in the unintended death of [the victim]." (Internal quotation marks omitted.) Id., 139. The court held that, even with the copious amounts of the victim's blood, "and the setting of the injury—a family room in a home, where one does not expect accidental conduct to produce an injury causing the loss of that much blood—a jury could reasonably infer that the defendant acted with an intent to cause the victim serious injury . . . ." Id. The court also stated that "the evidence of intent to kill was not overwhelming. . . . [P]rior cases in which this court has held that the defendant was not entitled to any lesser included offense instructions are distinguishable . . . . For example, in *State* v. *Crafts*, supra, 226 Conn. 251, there was evidence of prior planning and preparation—the defendant had arranged for the rental of a woodchipper to dispose of the victim's body prior to causing the victim's death, making the defendant's claim of a 'sudden confrontation . . . too speculative

---

[23] The defendant also had raised a separate sufficiency of the evidence claim, which this court rejected, concluding that the circumstantial evidence presented at trial "reasonably supports the inference of an intent to kill that the jury drew." *State* v. *Sivri*, supra, 231 Conn. 130.

to put the issue of intent sufficiently in dispute.' " *State* v. *Sivri*, supra, 231 Conn. 140.

We conclude that, as in *Sivri*, in the present case, there was sufficient evidence to support a reasonable inference by the jury that a sudden or spontaneous incident occurred, resulting in the victim's unintended death. Moreover, we further agree with the defendant's contention that, unlike *Sivri*, in the present case, affirmative evidence actually was introduced to support that theory, namely, the defendant's testimony[24] and his statement to the police about the alcohol-fueled altercation and struggle with the victim. Indeed, as the Appellate Court noted in its opinion: "When the police detectives who took the defendant's statement asked whether he had killed the victim, the defendant stated, 'I guess you could say we both did, *but not on purpose.*' " (Emphasis added.) *State* v. *Smith*, supra, 65 Conn. App. 129.

---

[24] The defendant testified on direct examination that after he had exited the bathroom and had seen Solek and the victim fighting, the victim struck the defendant in his mouth with her elbow. After he pushed her, she struck him again on the face with sufficient force to push him back into the bathroom. At this time, the victim and Solek were still fighting. The defendant then testified that he had grabbed the victim in a headlock and held her in that position while telling her to "calm down." After she stopped fighting for a few seconds, he released her from the hold. The defendant testified that the victim then began to swing at him and Solek again. The victim and Solek struck each other; the victim then hit the defendant again. At this point, the defendant grabbed the victim and put her in a choke hold again, again telling her to "calm down." The defendant testified that Solek and the victim, however, had continued to scream at and fight with each other. The defendant testified that although he had tried to persuade Solek to leave, Solek refused to go and continued to fight with the victim. The defendant testified that the victim had continued to fight with them. He then placed her in another headlock, testifying that "I just put her on her back and I grabbed her shoulders, kind of like half neck half shoulder," and tried to calm her. The defendant testified that the victim continued to fight and scream. The defendant then kept the victim in the hold; it was at this point that Solek struck the victim with the clothes iron before kicking her and sexually assaulting her.

The state claims that the defendant's reliance on *Sivri* is misplaced because, unlike that case, wherein the manner of death was unknown, the manner of the victim's death in the present case, namely, strangulation, is inconsistent with a sudden or spontaneous killing. We disagree with the state because, on the evidence in this record, particularly the defendant's statement, we cannot conclude, as a matter of law, that the evidence does not suggest "at least a possibility that the defendant acted with a lesser intent than that of the specific intent to kill." (Internal quotation marks omitted.) *State* v. *Sivri*, supra, 231 Conn. 139; *State* v. *Falby*, supra, 187 Conn. 30. Indeed, this court's decision in *Falby* is particularly instructive on this point. In *Falby*, this court held that, in a murder trial wherein the defendant was convicted of killing a child by manual strangulation, the trial court improperly refused to instruct the jury on the lesser included offenses of second degree manslaughter and criminally negligent homicide. *State* v. *Falby*, supra, 30.[25] We find *Falby* especially persuasive because, in that case, when the defendant claimed that during the act of strangling, he became scared and threw the child, we concluded that the "evidence sug-gest[ed] *at least a possibility* that the defendant acted recklessly or with criminal negligence in leaving a child with her face in the dirt following another such attack." (Emphasis added.) Id.; compare *State* v. *Rasmussen*, supra, 225 Conn. 72 (first degree manslaughter instruc-tion not justified because "[i]t requires nothing more than common sense to conclude that slashes to the neck of a conscious victim that severed the victim's jugular vein, trachea, larynx and esophagus and the impalement of the victim by a spear are evidence of intent to kill rather than mere recklessness or intent to injure seriously") and *State* v. *Herring*, supra, 210 Conn.

---

[25] The trial court, however, did instruct the jury on the lesser included offense of first degree manslaughter. *State* v. *Falby*, supra, 187 Conn. 29.

93–94, 106 (defendant's intent not sufficiently in dispute when victim's head, with fatal shotgun wound, found wrapped in plastic).

The state also contends that the defendant failed to advance any arguments at trial in support of his contention that he only intended to injure, and not kill, the victim. According to the state, the defendant argued that he was not responsible for the victim's death; therefore, the only possible conviction could be for murder.[26] We disagree with this contention, and conclude that the Appellate Court's emphasis on the defendant's position at trial that "he not only did not intend to kill the victim, but that he also never intended to injure her"; *State* v. *Smith*, supra, 65 Conn. App. 134; rather than on the inferences that could be drawn from his statement to the police, was improper. So long as the evidence reasonably can "justify a finding of guilt of the lesser offense"; *State* v. *Rasmussen*, supra, 225 Conn. 68; a "defendant's claim of innocence [does] not automatically preclude him from requesting an instruction on lesser included homicides that require a less serious degree of culpable intent." (Internal quotation marks omitted.) Id., 65; see also *State* v. *Edwards*, 214 Conn. 57, 65, 570 A.2d 193 (1990) ("[t]here is . . . nothing inherently inconsistent with the defendant's pressing for an acquittal based on a theory of pure accident while simultaneously requesting instructions on lesser included offenses within the crime of murder"); *State* v. *Green*, 207 Conn. 1, 14, 540 A.2d 659 (1988) ("[t]he fact that a defendant denies having any involvement in

[26] The state specifically claims that, because the defendant's position at trial was that his actions were only intended to "calm" the victim, he can not now claim that he merely had the intent to injure, rather than kill, her. The state also claims that the content of the defendant's statement to the police, while suggestive of panic, fear and even self-defense, does not support a first degree manslaughter instruction. We disagree with these contentions because of the elusive nature of the mental state element, particularly given the circumstances of this case.

a crime . . . does not necessarily preclude him from obtaining an instruction on a lesser included offense if there are facts in evidence that would reasonably support such an instruction"). We conclude, therefore, that the Appellate Court improperly determined that the defendant was not entitled to a jury instruction on the lesser included offense of manslaughter in the first degree.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court, and to remand the case to that court for a new trial.

In this opinion BORDEN and KATZ, Js., concurred.

SULLIVAN, C. J., with whom VERTEFEUILLE, J., joins, dissenting. I disagree with parts II and III of the majority opinion. Thus, I believe that the Appellate Court properly concluded that the defendant, Scott Smith, was not entitled to the instruction he requested on manslaughter in the first degree as a lesser included offense of the crime of murder, and, accordingly, I dissent.

As the majority correctly notes, under *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), "[a] defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit

the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser."

In the present case, there is no dispute that the defendant did not explain to the trial court why he believed that his requested charge was proper. For this reason, I believe that the defendant failed to satisfy the first prong of the *Whistnant* test. "The first prong of *Whistnant* requires that the defendant request 'an appropriate instruction,' and a proposed instruction on a lesser included offense, like any other proposed jury instruction, is not appropriate unless made in compliance with [the Connecticut Practice Book]." *State* v. *McIntosh*, 199 Conn. 155, 158, 506 A.2d 104 (1986). Practice Book § 42-18 provides in relevant part: "(a) When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply.* . . ." (Emphasis added.)

As the majority notes, quoting *State* v. *Corbin*, 260 Conn. 730, 746, 799 A.2d 1056 (2002), "[w]e previously have held, in the context of a written request to charge on a lesser included offense, [that the] requirement of [§ 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) Page 465 of the majority opinion. As the majority further notes, the defendant concedes that he did not comply with § 42-18 because his written request for an instruction on the lesser included offense of manslaughter did not explain how the requested charge was justified by the evidence before the court. Page 466 of the majority opinion.

The majority, however, states further that "even partial compliance with § 42-18, accompanied by substan-

tial additional support in the record for either party, such as detailed colloquies with the court and opposing counsel and a postcharge exception, will also satisfy the first prong of *Whistnant. This is true as long as the trial court is informed adequately of the factual and legal bases for the instructional request.*" (Emphasis added.) Page 466 of the majority opinion.

The majority cites as evidence that the court was adequately informed of the factual basis for the requested charge a discussion between the court and the attorneys for both the state and the defendant. Footnote 15 of the majority opinion. At no point in that discussion, however, did the defendant explain any possible factual basis for the requested manslaughter charge, even after the court explained its decision not to give the requested charge by stating that it did not believe that there was any evidence of an intent to cause serious physical injury to the victim. Thus, although, as the majority states, the court engaged in "some discussion about the facts of the case and the differing mental states of murder and manslaughter as applied to the evidence of the defendant's conduct"; pages 464–65 of the majority opinion; I believe that this colloquy, rather than indicating that the trial court was apprised of the basis for the requested charge, clearly indicates that that court did not believe that there was any evidence of the state of mind required for a manslaughter conviction.

Similarly, although, as the majority indicates, the defendant's taking of an exception to the court's charge to the jury "further alert[ed] the trial court to [the defendant's] disagreement with the refusal to give the lesser included offense instruction"; page 468 of the majority opinion; the defendant did not at that time explain to the court how the requested charge could be justified by the evidence. Neither the defendant nor the majority maintain otherwise.

The trial court is not required to speculate as to how the evidence could fit a charge requested by the defendant where the state asserts that the evidence does not fit that charge and the defendant's attorney provides no explanation whatsoever of how the evidence could fit that charge. The fact that this court can devise a possible explanation that *could* have been provided to the trial court by the defense counsel does not mean that the trial court should have divined that hypothetical defense argument on its own. Nor does the fact that the court knows what evidence is before it—as, presumably, courts always do—mean that the court is charged with knowing how that evidence might justify a requested charge. This is particularly so where the justification for the requested charge requires the drawing of inferences from the evidence, such as inferences regarding a state of mind, and where the issue of whether the evidence can justify the charge at all is disputed.

Thus, in the present case, I believe that the defendant did not comply with the first prong of the *Whistnant* test, either in form or in substance, because at no time did the defendant apprise the trial court of any basis in the evidence for his requested charge, even when the trial court affirmatively indicated that it was aware of no such basis and was refusing to make the requested charge for that reason.

In addition, I disagree with part III of the majority opinion, regarding the third and fourth prongs of the *Whistnant* test. I believe that the trial court is in the best position to evaluate the evidence before it and to determine whether that evidence justifies a requested charge on a lesser included offense. In the present case, the trial court determined that the issue of whether the defendant acted with the mental state necessary to justify a conviction for manslaughter was not sufficiently in dispute so as to justify the requested instruc-

tion. I believe that this determination by the trial court is adequately justified by the evidence and should not be overturned.

Accordingly, I respectfully dissent.