# STATE OF CONNECTICUT *v.* HAKIM RASHEED JEFFERSON
## (AC 29892)

DiPentima, Robinson and Schaller, Js.

Argued December 8, 2008—officially released May 26, 2009

 

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Paul J. Ferencek*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Hakim Rasheed Jefferson, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a). On appeal, the defendant claims that the trial court improperly failed to give an instruction to the jury on intentional manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a and 53a-55 (a) (1), as a lesser offense included within the crime of murder. We affirm the judgment of the trial court.

The defendant was charged with murder in connection with the shooting death of Edward Gordon on May 11, 2002. In his statement to the police following the incident, the defendant admitted to being the shooter but denied that he had intended to kill the victim. The principal issue at the defendant's trial was whether he had intended to cause the death of the victim.[1]

The jury reasonably could have found the following facts. In early May, 2002, the defendant witnessed an

---

[1] To establish a violation of General Statutes § 53a-54a (a), the crime of murder, the state must prove beyond a reasonable doubt that the defendant not only caused the death of the victim but did so with the specific intent to cause death.

argument between his friend, David Wash, and the victim, a man he had never met before, on Stillwater Avenue in Stamford. Approximately one week later, on May 11, 2002, the defendant and Wash went to a Stamford nightclub called Sonny's Cafe. They arrived at the club between 12:15 and 12:30 a.m. Shortly thereafter, the defendant noticed that the victim was also at the club. The victim "was staring at [Wash and the defendant] in a provoking manner." This made the defendant "nervous and scared . . . that [the victim] was going to do or say something to [him]." The defendant left the club and waited outside until closing time.

After the club closed at approximately 1:45 a.m., fifty to sixty people continued to mingle outside. At approximately 2 a.m., the defendant saw the victim leaning on a vehicle parked in front of the club. The victim stared at the defendant and Wash and then approached a group of men as he pointed at the defendant. The victim said to the group: "I'm [going to] set it on these guys. Watch my back." The victim walked away, heading up the street and away from the club. The defendant followed the victim, pulled out his loaded gun and fired two gunshots in the victim's direction. The victim began to run, with the defendant chasing him and firing three more gunshots from about three to four feet away. Those three bullets hit the victim, causing him to collapse to the ground in the middle of the road. The defendant stood over the victim and fired two more gunshots at point blank range into the victim's body. The defendant fired a total of seven gunshots at the victim. The medical examiner found evidence of five gunshot wounds on the victim's body, all of which were located in the back portion of the trunk area.

In the course of an in camera discussion after the close of evidence, defense counsel represented to the court that he was not pursuing jury instructions on any of the lesser included offenses contained in his October

19, 2003 draft request to charge.[2] A conversation ensued regarding two lesser included offenses that were *not* included in that document, namely, intentional manslaughter in the first degree *with a firearm* in violation of §§ 53a-55a and 53a-55 (a) (1)[3] and reckless manslaughter in the first degree *with a firearm* in violation of §§ 53a-55a and 53a-55 (a) (3).[4] The parties specifically agreed that, given the nature of the murder and the evidence produced at trial, the jury should be instructed on the latter crime. Defense counsel represented that he did not intend to request an instruction on the former crime, as he believed there would be no practical advantage in arguing to the jury that the defendant possessed inconsistent mental states.

Immediately following this in camera discussion, the court held a charging conference on the record. Defense

[2] At the start of jury selection, the court instructed the parties "to provide it with rough drafts of possible jury instructions . . . which they might request of the court at the close of evidence." In response, defense counsel submitted to the court a document dated October 19, 2003. That document contained a number of suggested jury instructions, including instructions on five lesser offenses included within the crime of murder.

Those five lesser included offenses were manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2), manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3), manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1) and criminally negligent homicide in violation of General Statutes § 53a-58 (a).

[3] A person is guilty of intentional manslaughter in the first degree with a firearm when, "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person"; General Statutes § 53a-55 (a) (1); and "in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ." General Statutes § 53a-55a (a).

[4] A person is guilty of reckless manslaughter in the first degree with a firearm when, "under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person"; General Statutes § 53a-55 (a) (3); and "in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ." General Statutes § 53a-55a (a).

counsel stated: "I will withdraw all requests included in that preliminary charge related to a lesser included offense with the exception of two and that is, reckless manslaughter with a firearm,[5] which I must advise the court that I respectfully request to be given in your charge." Defense counsel then stated: "I still have mixed feelings about the intentional manslaughter[6] and quite honestly my feelings are that it [is] . . . certainly not as applicable as the reckless charge and so I'm focusing on a specific request for the reckless charge as we speak. . . . [A]ny other charges unrelated to a lesser included offense that were made in my preliminary draft I will leave to the discretion of the court."

The prosecutor responded: "[W]e've spoken about this in chambers. . . . [T]he state's not objecting to the reckless manslaughter with a firearm charge coming in as a lesser included offense. . . . I didn't quite understand counsel as to whether he was withdrawing his request as to the intentional manslaughter with a firearm. If he is still pressing it, I would argue that the evidence doesn't support the giving of that charge. [The defendant] testified [that] he couldn't control his conduct at the time, he was too intoxicated. And my understanding based on the totality of this testimony was that . . . essentially, he didn't know what he was doing. He also indicated in his statement that he was scared when he fired the shots. So, I don't see any evidence of intent to merely cause serious physical injury."

[5] The court, in its memorandum of decision on the defendant's motion for rectification, stated that "[t]o the extent this comment suggests that the October 19, [2003] request included a proposed instruction for first degree reckless manslaughter with a firearm, defense counsel obviously misspoke, as that document clearly contains no such request."

[6] The court, in its memorandum of decision on the defendant's motion for rectification, noted that defense counsel's references to intentional manslaughter during this colloquy, when properly placed in context, relate to the crime of intentional manslaughter in the first degree with a firearm, as it had just been discussed in chambers.

The court stated to defense counsel: "I think that's consistent with what you just said . . . ." Defense counsel replied: "I think it is, too. . . . [C]learly, [the] reckless manslaughter charge applies here . . . along with intoxication. I leave it to the court's discretion with respect to the intentional manslaughter. I am not pressing that. . . . I'm not really prepared to say I'm going to remove that from my body of requests, but if . . . someone put a gun to my belly and asked me to make the right decision, the odds are that I don't think I could argue to this jury intentional manslaughter, but I know I can argue [recklessness]. And I hate being wishy-washy, I really do, and I apologize, Your Honor, if that's the way it comes through, but I think some can [see] my dilemma here and for that purpose I think what I've said is about as much as I can say." The court stated: "All right. At this point in time, from what I have heard, it is clearly my intent . . . from the evidence that has been produced here and the testimony, specifically, of the defendant, I think a fair and reasonable request would be to include a charge on intoxication and reckless manslaughter by means of a firearm. . . . Anything else you want to talk about right now?" Both counsel replied: "No, Your Honor."

In its final instructions, the court instructed the jury on the charges of murder and reckless manslaughter in the first degree with a firearm as a lesser offense included within the crime of murder. In light of the defendant's testimony that he was intoxicated at the time of the shooting because he had ingested both marijuana and a substantial amount of alcohol during the course of the evening and, therefore, could not control his actions, the court also instructed the jury on intoxication as a defense. At the conclusion of the court's charge, both counsel indicated that they were not taking any exceptions to the instructions. The jury returned a

guilty verdict on the murder charge, and the defendant was sentenced to a term of fifty years incarceration.

On appeal, the defendant claims that the court improperly failed to instruct the jury on the lesser included offense of intentional manslaughter in the first degree with a firearm. The state argues in response that the defendant is not entitled to review of this claim because he waived it when he withdrew his request for that instruction. The state further argues that the defendant is not entitled to review of his claim because it is unpreserved, and the defendant did not seek review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Finally, the state argues that even if the defendant's claim is reviewable, it fails to satisfy the *Whistnant*[7] test.

We are not persuaded that the defendant waived his claim. "Waiver consists of the intentional abandonment or voluntary relinquishment of a known right. . . . [It] involves the idea of assent, and assent is an act of understanding. . . . [W]aiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *State* v. *Ross V.*, 110 Conn. App. 1, 4–5, 953 A.2d 945, cert.

---

[7] In *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), our Supreme Court developed the following test to determine whether a trial court properly refused to give an instruction on a lesser included offense. "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.

denied, 289 Conn. 939, 958 A.2d 1247 (2008). The circumstances of this case, in particular, the argument and colloquy that took place at the charging conference, do not persuade us that the defendant waived his request that the court instruct the jury on the lesser included offense of intentional manslaughter in the first degree with a firearm. During that colloquy, defense counsel explicitly stated that he would leave it to the court's discretion as to whether to charge the jury on that particular lesser included offense. Cf. *State* v. *Fabricatore*, 281 Conn. 469, 481, 915 A.2d 872 (2007) (concluding there was waiver when defense counsel expressly stated he was satisfied with challenged jury instruction). The defendant's failure to object once the court had declined to instruct the jury may bear on the issue of preservation, but it does not constitute waiver.

This leads us to the state's argument that the defendant's claim, if not deemed waived, was unpreserved. Under our rules of practice, to preserve a claim of instructional error, a defendant must either cover the matter by a written request to charge or take exception immediately after the charge is delivered. Practice Book § 16-20. In this case, it is clear that the defendant did not take exception to the court's charge after it was delivered. What is not clear is whether the defendant filed a written request to charge. The defendant asserts that the October 19, 2003 document[8] was his formal written request to charge. Yet, the court, in its memorandum of decision on the defendant's motion for rectification,[9] stated: "At the commencement of jury selection,

---

[8] See footnote 2.

[9] When the defendant appealed from his conviction directly to the Supreme Court on August 1, 2006, the October 19, 2003 document was not included in the record. On October 11, 2007, the defendant filed a motion for rectification, requesting that the record be rectified to incorporate the October 19, 2003 document into the court file and be reflected on the docket sheets as being filed. On December 11, 2007, the trial court denied the motion for rectification because it found, among other things, that the October 19, 2003 request to charge was a preliminary draft of possible jury instructions that was not intended to constitute a formal request to charge.

the court solicited the state and the defense to provide it with rough drafts of possible jury instructions which they might request of the court at the close of evidence. In response, the defendant's attorney . . . submitted the [October 19, 2003] twenty-four page request to charge. The document constituted, in large measure, a compilation of jury instructions which [the defendant's attorney] had apparently used in other, earlier cases. That the document was not meant to constitute a formal request to charge pursuant to Practice Book § 42-16 et seq. is demonstrated by the fact that it was filed prior to the presentation of evidence, and refers, at times, to other defendants and victims not connected to [this] case. In submitting this draft to the court, defense counsel never represented that he intended to file it with the clerk as a pleading, nor did he in fact do so."

On the basis of our review of the October 19, 2003 draft request to charge, we agree with the court's characterization of that document. Because that document was not filed with the court in compliance with Practice Book § 42-17,[10] it cannot be considered a written request to charge in accordance with Practice Book § 16-20. As

Moreover, the court determined that the unfiled draft request did not include an instruction on intentional manslaughter in the first degree with a firearm. Thereafter, the defendant filed a motion for review of the denial of his motion for rectification, requesting as relief that the October 19, 2003 document either be included in the court file or be marked as an exhibit. On January 23, 2008, the Supreme Court granted the motion to review but denied the relief requested.

The defendant's brief and accompanying appendix contained, respectively, quotations from the October 19, 2003 request to charge and a complete copy of that document. On March 6, 2008, the state filed a motion requesting that the Supreme Court strike those portions of the defendant's brief and appendix. The court denied the motion to strike on April 9, 2008. On May 21, 2008, the defendant's appeal was transferred to this court.

[10] Practice Book § 42-17 provides in relevant part: "Written requests to charge the jury must be filed in triplicate with the clerk before the beginning of the arguments or at such earlier time during the trial as the judicial authority directs, and the clerk shall file them and forthwith hand one copy to the judicial authority and one to opposing counsel. . . ."

a consequence, the defendant did not properly preserve his claim under our rules of practice. Despite the failure to preserve, however, because the instruction at issue concerns a lesser included offense, a question is raised as to whether the *Whistnant* test[11] supplants our general preservation requirements, in that the first prong of that test asks this court to determine whether the defendant requested "an appropriate instruction." *Whistnant,* in a sense, supplies its own preservation requirement. See *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

The answer to this question is significant in the present case because, as we will discuss, relatively recent case law has expanded the concept of a "request for an 'appropriate instruction' " under *Whistnant* to allow an appellate court to consider oral requests and colloquies with the court; see *State* v. *Smith,* 262 Conn. 453, 467–68, 815 A.2d 1216 (2003); whereas previously, if the request was not in writing, it was considered inadequate. See *State* v. *Rudd,* 62 Conn. App. 702, 706–708, 773 A.2d 370 (2001). Moreover, that same case law also provides that as long as the trial court's attention was drawn to the factual and legal bases for the request, the defendant is regarded as having requested an "appropriate instruction." See *State* v. *Smith,* supra, 467–68. Accordingly, under existing case law, an unpreserved claim that the court improperly refused to charge on a lesser included offense does not preclude the satisfaction of the first prong of the *Whistnant* test. As a result, we must determine whether *Whistnant* supersedes our general preservation requirements in these particular circumstances.

Our existing case law provides no clear answer to this question. In *State* v. *Henning,* 220 Conn. 417, 427, 599 A.2d 1065 (1991), the defendant did not request an

---

[11] See footnote 7.

instruction on the lesser included offense and took no exception to the charge as given by the court. Our Supreme Court first applied the general preservation rule, stating: "Since the defendant neither requested an instruction on [the lesser included offense] nor took an exception to the trial court's charge, this court is not bound to review the defendant's claim."[12] Id. The court, however, went on to analyze the defendant's claim under *Whistnant* and assumed, "for the purposes of [its] analysis," that the first prong was satisfied, even though its previous determination that the defendant did not request the instruction on the lesser included offense indicated that the first prong was not satisfied. Id., 428. In *State* v. *Ortiz*, 71 Conn. App. 865, 878, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002), this court, referring to *Henning*, stated: "Despite [*Whistnant*'s] mandating that one party must request a charge to be entitled to have the charge given to the jury, our Supreme Court has reviewed an unpreserved *Whistnant* claim." This statement indicates that we interpreted *Henning* to mean that the first prong of *Whistnant* does, in fact, supplant our general preservation analysis.

We therefore proceed to determine whether the defendant in the present case made a request for an "appropriate instruction" in accordance with the first prong of *Whistnant*. "In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, [179 Conn. 588] we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . [T]he jury's role as fact-finder is so central to our jurisprudence that, in those cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the

---

[12] The court noted in a footnote that the defendant did not request review pursuant to *Golding*. See *State* v. *Henning*, supra, 220 Conn. 427 n.14.

defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence. . . . Under *Whistnant*, the evidence is sufficiently in dispute where it is of such factual quality that would permit the [jury] reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal. . . . Nonetheless, jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on the evidence . . . from which inferences can fairly be drawn. . . . They should not [however] be encouraged to engage in speculation. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Ray*, 228 Conn. 147, 154–55, 635 A.2d 777 (1993).

"A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book § 854 [now § 42-18]." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 261, 681 A.2d 922 (1996). Practice Book § 42-18 (a) provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . ." "[I]n the context of a written request to charge on a lesser included offense, [the] requirement of [Practice Book § 42-18] is met only if the proposed request contains such a complete statement of the

essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) *State* v. *Corbin,* 260 Conn. 730, 746, 799 A.2d 1056 (2002).

In *State* v. *Smith,* supra, 262 Conn. 466, however, the defendant conceded that his written request to charge lacked a statement of the essential facts and, therefore, did not comply with all the provisions of Practice Book § 42-18. Our Supreme Court determined that this noncompliance did not conclusively indicate that the defendant failed to satisfy the first prong of *Whistnant. State* v. *Smith,* supra, 466. The court stated: "Although strict compliance with the provisions of [Practice Book] § 42-18 is certainly the least perilous method of satisfying *Whistnant*'s first prong, failure to do so is not, by itself, fatal to the defendant's claim. We have deemed the first prong of *Whistnant* satisfied when the record indicates that the trial court knew the precise point to which the defendant wished to call attention. . . . Indeed, even partial compliance with [Practice Book] § 42-18, accompanied by substantial additional support in the record from either party, such as detailed colloquies with the court and opposing counsel and a postcharge exception, will also satisfy the first prong of *Whistnant*. This is true as long as the trial court is informed adequately of the factual and legal bases for the instructional request. . . .

"In [this] case, despite the deficiency in the written request, the colloquy among the trial court, the state and the defendant indicates that the trial court was aware of and understood the facts underlying the defendant's request for the lesser included . . . instruction. The trial court, during the colloquy, acknowledged the significance of the defendant's statement in the context of the request. Moreover, after the jury was charged, the defendant took an exception, further alerting the trial court to his disagreement with the refusal to give

the lesser included offense instruction. Because the record . . . demonstrates that the trial court's attention amply was drawn to the factual and legal bases for the request to charge on the lesser included offense, we conclude that the defendant requested an appropriate instruction, thereby satisfying the first prong of *State* v. *Whistnant*, supra, 179 Conn. 588." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, supra, 262 Conn. 466–68.[13]

In the present case, the defendant argues that the October 19, 2003 document, which included a request for the court to instruct on intentional manslaughter in the first degree, coupled with his oral request for an instruction on intentional manslaughter in the first degree *with a firearm* made during the in camera discussion, amply drew the court's attention to the factual and legal bases for his request to charge and, therefore, constituted a request for an "appropriate instruction" under *Smith*. The circumstances of this case, however, are distinguishable from those of *Smith*. In *Smith*, the defendant filed a formal, written request to charge, and the issue was that it "lacked a statement of the essential facts and, therefore, did not comply completely with the provisions of Practice Book § 42-18." *State* v. *Smith*, supra, 262 Conn. 466. Aside from the fact that the defendant's October 19, 2003 document cannot be considered a written request to charge because the defendant failed to comply with Practice Book § 42-17, it is clear that the document makes no reference to the lesser included offense of intentional manslaughter in the first degree

[13] See also *State* v. *Faria*, 47 Conn. App. 159, 182–83, 703 A.2d 1149 (1997) (first prong satisfied despite incomplete factual statement in written request when court aware of legal and factual basis for request via off record chambers conference and on record colloquy), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998); *State* v. *Preston*, 46 Conn. App. 778, 783, 700 A.2d 1190 (1997) (defendant's written request to charge and colloquy with court complied with first prong by alerting court to basis of request), rev'd on other grounds, 248 Conn. 472, 728 A.2d 1087 (1999).

*with a firearm,* nor does it set forth the evidentiary basis for such an instruction.

In addition, the defendant failed to offer any factual or legal basis for his request to instruct on intentional manslaughter in the first degree with a firearm during the in camera discussion or the colloquy with the court. On both occasions, he stated that he might want an instruction on that specific lesser included offense, but he did not make an argument as to the evidence that supported the giving of that instruction. Moreover, the defendant did not take exception to the court's charge as given and, therefore, failed to alert the court to his objection to the refusal to give the lesser included offense instruction. We cannot say, therefore, that the court was informed adequately of the factual and legal bases for the instruction at issue. We conclude that the defendant did not make a request for an "appropriate instruction" in accordance with the first prong of *Whistnant.* The defendant, therefore, was not entitled to a jury instruction on intentional manslaughter in the first degree with a firearm as a lesser offense included within the crime of murder.

The defendant further argues that "in the unlikely event [that] this court finds [that] the first prong [of *Whistnant*] has not been satisfied, the claim should be reviewed for plain error." In support of this argument, the defendant cites *State* v. *Horne*, 19 Conn. App. 111, 144–45, 562 A.2d 43 (1989), rev'd, 215 Conn. 538, 577 A.2d 694 (1990). In *Horne*, this court held: "Even in the absence of . . . a request . . . the trial court may, sua sponte, properly submit a lesser included offense to the jury. . . . Similarly, an appellate court may invoke the [*Whistnant*] doctrine where the trial court record justifies its application. . . . We may do so . . . and thus satisfy the first requirement." (Citation omitted.) Id., 145.

Our decision in *Horne* essentially created an exception to the first prong of *Whistnant*. The defendant incorrectly characterizes it as plain error review. In any event, the trial court record does not justify the application of this exception in the present case. A person is guilty of the crime of intentional manslaughter in the first degree with a firearm when, "(1) *with the intent* to cause serious physical injury to another person, (2) [he] caused the death of such person or a third person (3) using, or threatening to use by displaying or representing by his words or conduct, that he possesses a firearm." (Emphasis in original; internal quotation marks omitted.) *State* v. *Mourning*, 104 Conn. App. 262, 270, 934 A.2d 263, cert. denied, 285 Conn. 903, 938 A.2d 594 (2007). During the trial, when asked why he shot the victim, the defendant responded that he "was very intoxicated so . . . [he] really had no control over [his] actions," and he "didn't know what [he] was doing." This testimony is entirely inconsistent with the defendant's claim on appeal that when he shot the victim, he possessed the specific intent to cause serious physical injury to the victim.[14] Therefore, we conclude that the evidence does not support an instruction on intentional manslaughter in the first degree with a firearm.[15]

The judgment is affirmed.

In this opinion the other judges concurred.

[14] The defendant admitted during the charge conference that on the basis of the inconsistent mental states, "[he did not] think [he] could argue to this jury intentional manslaughter [in the first degree with a firearm]."

[15] Given this evidence, we also conclude that it was not plain error for the court not to instruct the jury on the lesser included offense of intentional manslaughter in the first degree with a firearm. "[This] court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Practice Book § 60-5. "Plain error review is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 287–88, 963 A.2d 11 (2009).